TILLY GILBERT, Executor of CATHERINE MINOT, *vs.* Heirs of MEHITABLE L. RICHARDS.

A legacy to three sisters of the plate, musical instruments, pictures, &c. which belonged to their father, gives them a joint tenancy in the goods bequeathed.

Where two of the legatees died in the life of the testatrix, held that the legacy survived to the remaining legatee, and did not pass to the residuary legatee, under a bequest of the residuum and of all lapsed legacies.

The following case stated shows the manner in which this cause was brought up, and the facts upon which the opinion of the court was founded.

Mrs. Minot, by her will, gave and bequeathed to Elizabeth Swan of Boston, Sarah C. Thomas of New York, and Mehitable L. Richards of Westhaven, Vt. her step-daughters, the several articles of plate, the pictures, paintings, musical instruments, and household furniture, which their father, her late husband, Christopher Minot, brought from Boston, or such parts thereof, as should remain at her decease.

After the execution of the will, which was in June 1826, and previous to the making of the codicil thereto, which is also made a part of this case, Elial Gilbert one of the devisees in the will, also Charles Rice and Polly Rice two of the children of Abigail Rice, also devisees in the will, died; and Mrs. Swan and Mrs. Thomas, two of the legatees in the will, also died.

Tilly Rice, only remaining child of Abigail Rice, and one of the devisees in the will, is still living, also Dorothy Banister and Abigail White, both of the state of Massachusetts, two of the legatees in the will, are still living.

Polly Rice was the wife of Clement Smith, and left four children.

Mrs. Mehitable L. Richards survived the testatrix, but died soon after. The appellees are heirs and representatives of Mrs. Richards.

By the codicil, *all lapsed legacies* are given to the executor in the will. From the opinion of the court it appears also that the codicil makes the executor the residuary legatee. The executor, in rendering his account to the probate court for settlement, gave himself credit, the sum of $278,86, it being two thirds of the appraised value of the above mentioned legacy to Mrs. Swan, Thomas and Richards, the executor claiming the same by virtue of the codicil.

This item was disallowed by the probate court, and from this sentence or decree of the said probate court, the executor appealed to this court.

Rutland,
July,
1835.

Gilbert, Ex'r.
vs.
Heirs of
Richards.

The question presented to the court is, whether the appellees are entitled to the whole of the said articles of plate, pictures, paintings, musical instruments, and household furniture, given by the will to the said Mrs. Swan, Thomas, and Richards, or the executor, to two thirds thereof, by virtue of the codicil?

*Buel & Ormsbee, for the heirs.*—That the decree of the probate court, in disallowing the item with which the executor in his account credits himself as property belonging to himself (the same being a portion of a specific legacy given by the will to Mehitable L. Richards, Elizabeth Swan, and Sarah C. Thomas, the said Mehitable being the only one of the said legatees surviving the testatrix) is correct—Because—

1. The legacy being a legacy of specific articles to three legatees, without any words of severance, does not lapse by the death of any one or two of the legatees, but is a joint legacy, and by the "*jus accrescendi*" vests in those of the legatees who survive the testatrix.—Litt. 282. Co. Litt. 182, a Bl. Com. vol. 2, 399. Chitty's note on same page. Mad. Ch. vol. 2, 82. Rop. on legacies, vol. 2, 260. Kent's Com. vol. 2, 283—2 P. Will. 347—same 529, 1 Ver. 482.—*Shore* vs. *Billingsley.* Thos. Jones Rep. 162. 2 Ch. Cas. 64. 4 Bro. C. C. 15, *Campbell* vs. *Campbell.* 3 Ves. 628, *Motly* vs. *Bird,* 632. 6 Ves. 130—9 same 197, *Crook* vs. ————. Vt. Stat. 177. Kent's Com. vol. 4, 357. 2 vol. Caines Cas. 326.—*Cuyler et al* vs. *Bradt. et al.*

2. With reference to supervisorship where the legacy is joint and vests at the death of the testator, it is immaterial whether one of the legatees dies before or after the testator, the inchoate and contingent right survives when the vested and absolute right would survive.—Rop. on legacies vol. 1, 330. Ambl. 175 and 136. 2 Atk. 220. 3. Ves. 628. 2 P. W. M. 347. 1 Dickens' Rep. *Keys* vs. *Luffkin.* 6 Ves. 130. 3 Bro. 465.

3. The decree of the probate court is in accordance with the intention of the testatrix, so far as that intent can be gathered from the will and codicil.

*Smith & Andrews, contra.*—It is well settled by the English law, that if a devise, or legacy, specific, or otherwise, be given to two or more, with words indicating the intent that the legacy should vest in all, and yet the *jus accrescendi* should not attach, in such case, the legatees should be considered as *tenants* in *common.*— 1st P. W. 700—do 96—2 do 280. 1st Salk, 227. Croke Eliz. 695. 1 Atk. 592. 3 Bac. Abr. 199–198. 1 Brown, 118–23.

RUTLAND,
July,
1835.
Gilbert, Ex'r.
vs.
Heirs of
Richards.

Ves. 272–315. 3. Ves. 204. 2 Stra. 905. 1 Atk. 494–495. 6 Con. Eng. Chan. Rep. 66—5 do. 173. 3 Ves. 628–631. Madk. Chancery, 2d. vol. 23. 1 Salk, 391. 3 P. W. 115. 2 Strange, 807. 2 Merriode, 70.

It is equally well settled by the English law, that if the *jus accrescendi* will attach during the life of the testator, in the event of the death of one of two or more legatees or devisees, it will attach subsequent to his decease.—1 P. W. 96. 4 Bro. Cases, 242. 3 P. W. 115. 1 Salk, 229.

It is obvious from the above positions that the *jus accrescendi* which attaches to joint legacies is the same incident, and founded by analogy on the same principle which attaches to joint feoffments or grants.—Coke Littleton, 282, a 2 Black 399.

The origin of this estate—3 Bac. Abr. 204. 12 Mod. 303.— It was favored by the ancient law.—4 Ves. 630. 1 Salk. 392. 2 Black, 193. 2 Ves. 559.

But since the stat. of 12 Car. 2d, not favored even in England. 1 Wiles, 165. 1 Salk, 158.

Tenancies in common preferred by the English courts.—4 Ves. 551. 1 Brown, 118. 3 Ves. 631. 2 Mad. Chancery, 96.

The spiritual court of England does not allow of survivorship as between legatees.—2 P. W. 115. 1 Chan. Cases, 238.

It is a principle exceptionable in itself, has no foundation in natural justice, makes no provision for posterity, and often works great injury.

Such part only of the common law of England, is adopted here " as is applicable to the local situation and circumstances" of this state.—Vt. stat. 57. 2 Peters, 144.

The reasons for the existence of joint tenancies in England, have no operation in this country.—2 Hammond, 305.

From the earliest period of our history it has been discontinued. Plymouth colony in 1643—4 Kent, 362. See note.

It is wholly inconsistent with the spirit of our laws and the genius of our institutions, and has not been been favored by the laws of this country.—4 Kent, 361. 1 Mason, 224. 1 Root, 48. 1 Swift, 102. 5 Con. 365. 4 Day, 401. 2 Hammond, 305. 3 Pick. 360. 5 Mass. 522. 5 Binney, 16. 2 Kent, 350. Vt. Stat. 176–7. 1 Rev. Stat. N. Y. 1st vol. 727. See 44.

It is obvious that the rule of construction in relation to the creation of joint estates, is different in this country from the English rule. This is true of deeds as well as wills.—12 Mod. 296. 1 Wills, 341. 5 Con. 362. 9 Pick. 39.

RUTLAND,
July,
1835.

Gilbert, Ex'r.
vs.
Heirs of
Richards.

Survivorship is not allowed in a joint mortgage.—3 Mason, 378, *Randall* vs. *Philip*.

The importance of this rule in conveyances of *personal* estate is as great as it is in *real*.—2 Mad. Chan. 96, note e.

Never any good reason for the application of the principle of survivorship to personal estate. It was derived by analogy from similar estates in real property as the term *tenants* shows. All the real property, by the policy of the laws of England is supposed to be granted by, dependant upon, and holden of some superior lord, by and in consideration of certain services to be rendered by the tenant.

Supervisorship not allowed in Lex Mercatoria Coke Lit. 182.

Nor in stock owned and used jointly on a farm.—2 Black. 399.

No joint tenancy in a pecuniary legacy.—1st of Brown, 118. 1 Equity Abr. 292. 3 Chan. Rep. 214.

It is a fundamental maxim, upon which the construction of every will must depend, that the intention of the testator, as disclosed by the will, shall be fully and punctually carried into effect.—3 Cranch, 133. Some of the most difficult questions upon which courts have to decide arise from the construction of wills, the general rule, &c.

In ascertaining the intent of a particular clause, it is competent and proper to take into consideration every part of the will, and the circumstances, both of the property and the parties under which the will was made.—11 Pick. 376.

The nature of the legacy.

The situation of the legatees.

Evident, in this case, that the testatrix intended one third for each legatee.

A joint possession could not have been intended, consequently, not a joint estate. For separation of possession destroys such an estate,—4 Kent, 363.

A testator always contemplates the supervisorship of all devisees in the will and intends an interest to vest in all. The testatrix so intended in this case—one third to each. There is not the least evidence to the contary, except what is furnished by the use of phraseology, which in the English law has a fixed, technical meaning, and which meaning, we have shown, is not necessarily attached to it in *this* country.

Most certainly, when joint tenancies in real property, are regarded so unfavorably by the laws of the land, and especially by the laws of this state, this court will not favor such estate in personal property, in which, no reason founded in justice or policy even, could ever be discovered.

RUTLAND,
July,
1835.

Gilbert, Ex'r.
vs.
Heirs of
Richards.

It is unnatural to put a construction upon a clause in a will, making provisions for children favorable to a joint tenancy—5 Binney, 16. In that case Ch. J. Hilgham remarks, that when a man is providing for his children by his will, nothing can be more unnatural than an estate in joint tenancy.

From the existing circumstances, when the codicil was made, it is evident, the testatrix referred to the portions of the only legatees deceased, at that time, when she gives all *lapsed legacies* to her residuary legatee. Mrs. Minot says in her codicil, she intends to alter her will in relation to the devise to Elial Gilbert and in *other respects*. The devise to the children of Abagail Rice and the legacy in question must be intended to make the language consistent.

The opinion of the court was delivered by

WILLIAMS, Ch. J.—This case comes before us on an appeal from the court of probate. Mrs. Minot on 24th June, 1826, made her will, wherein she gave and bequeathed to her step-daughters, Elizabeth Swan, Sarah C. Thomas, and Mehitable L. Richards, a legacy which is set forth in the case agreed on by the parties.— In the life time of Mrs. Minot, Elizabeth Swan and Sarah C. Thomas, deceased. Subsequent to their decease, the testatrix made a codicil, wherein she gave to her executor, Mr. Gilbert, all lapsed legacies; and also made him her residuary legatee. He was made executor by the original will. On presenting his account to the court of probate, the executor, Mr Gilbert, asked an allowance of the sum of $278,86, being two thirds of the value or amount of the legacy bequeathed by Mrs. Minot to her step-daughters before mentioned, the children of Mrs. Minot claiming that it belonged to him by the will, as a lapsed legacy. This claim was disallowed, and an appeal taken by the executor. The case involves the construction to be placed on the clause of the will before mentioned. It is contended on the one side, that the whole legacy belongs to the representatives of Mrs. Richards, by virtue of the *jus accrescendi*; and on the part of the executor, that the testatrix intended by the will to give to the legatees, Mrs. Swan, Thomas, and Richards, a tenancy in common, in the several articles therein bequeathed. It is an admitted principle, that in the construction of wills, it is the duty of the courts at all times, to give effect to the intention of the testator, when it can be done, consistent with the rules of law. The intention of the testator has been (not unaptly) called, the pole star, by which the courts must steer, in construing a will. Yet the intention has to be ascertained, and is frequently controlled

RUTLAND,
*July,*
1835.

Gilbert, Ex'r.
*vs.*
Heirs of
Richards.

by technical rules, and by the interpretation, which the law places upon technical expressions. By the application of these rules, it has sometimes been the case, that the wishes of a testator have been entirely frustrated, that is, the intention has been declared by the operation of the rules of law, to be different from what was known to be the real design of the testator. We must, however, in the construction of all instruments, apply to them the known and established principles which have been settled, and take it for granted that every person executing a written instrument, is acquainted with the rules of construction which the courts adopt, and that they frame their instruments accordingly. The inquiry in the present case is, whether the testatrix intended to constitute the three sisters, joint tenants, or tenants in common. If they were joint tenants, the *jus accrescendi* attaches by the operation of the law; and we are not at liberty to disregard the intention ascertained by the rules of law applicable to the case, for fear of consequences. If they were joint tenants, it is immaterial whether one or more of the legatees died before or after the death of the testatrix, the survivor at the death of the testatrix takes the whole. Among the rules laid down, we find none better established or more fully recognized than this, that when a legacy is given to two or more, and there are no words of severance, it is held to be a joint tenancy, subject, however, to certain exceptions; and although it is true, that courts will lay hold of almost any words to make a tenancy in common where it is manifestly for the interest of the legatees, yet if there are no such expressions they must consider that a joint tenancy was intended. Now I do not know that we are at liberty to disregard the rules of common law on this subject, upon principles of policy, or to say that they are contrary to the genius of our government; nor do I know that they are contrary either to policy or the genius of our government. If our legislature has altered the doctrine of the common law upon this subject in relation to real estate, a court may not go further, and alter it also in relation to any other estate. The legitimate rule upon this subject would be, that if the legislature has altered the common law in relation to real estate, and not as to personal, they were satisfied with the law as it was, in regard to personal estate. Words, by the common law, are construed to create an estate in joint tenancy, rather than in common; because it is considered as most beneficial to the tenants, and therefore they shall take a joint estate rather than an estate in common, unless words are introduced to manifest an intention to the contrary. And here, for the same reason, it is enacted that the

RUTLAND,
July,
1835.

Gilbert, Ex'r.
vs.
Heirs of
Richards.

same words shall constitute a tenancy in common. But the statute has gone no further, and has adopted no such principles for the construction of wills or other conveyances of personal estate. The various exceptions which have been introduced to the general rule, as it respects legacies, prove the rule. None of the reasons which induced the courts to make these exceptions, will apply to a bequest similar to the one under consideration. This was a specific legacy of property which could not well be divided equally, such as musical instruments, pictures, and paintings. The principles of law before referred to, should therefore govern in construing this legacy to be a joint tenancy. From an examination of the will, it is apparent that the testatrix, or the person who drew her will, perfectly understood the language proper to be used. Both in her will and in the codicil she uses the appropriate expression, where a tenancy in common was intended. And from her using the expression in the one case and not in the other, the only legitimate inference is, that she intended the rule of law upon this subject should be adhered to. At the time the codicil was made the testatrix was undoubtedly aware of the decease of several of the legatees, and she was therefore desirous of altering her will, both in respect to the devise to her brother, Elial Gilbert, and also in *other respects*. She provides specially for the property which she had before devised to him, as well as for the property devised to the children of her sister Abagail, two of whom were dead. It is not to be believed that she intended to alter the bequest already made to the children of her husband, by the general beqeust of *all lapsed legacies*, or of the residue of her estate to Mr. Gilbert, the executor. She would undoubtedly have mentioned that legacy particularly, had she intended that any part of it should go to him.

I have already remarked that, from the nature of the property, it was to be inferred that a joint tenancy was intended, the property was not capable of a just and perfect division. Although the value of it might be estimated by appraisers, at so much in cash, and the value of the different articles, so appraised, might have been divided into three parts. Yet it is evident that the value, either to the testatrix or legatees, could not be estimated in cash. A piece of plate—a musical instrument—a family portrait, or picture, would derive its value in a great measure from other than pecuniary considerations. It was, therefore, altogether desirable, that these sisters should have the property as joint owners, and that it should not be subject to a division. And furthermore it is not to be believed, that at the time of the making of this codicil, when two of

27

RUTLAND,
July,
1835.

Gilbert, Ex'r.
vs.
Heirs of
Richards.

the sisters were deceased, that the testatrix could have intended that this property, so valuable to the children of her husband and of so little comparative value to any one else, should be divided between the surviving daughter of her husband and a relation of hers, not of kin to that daughter. If such was her intention it should have been plainly manifested, and not left to be inferred from general terms. Whatever opinion, therefore, we may form of the wisdom or propriety of the rule of law which governs this case, we cannot but be satisfied that its application to this particular legacy, is both right and proper, and that the testatrix was aware of it at the time she made the codicil.

The decree of the court of probate is therefore affirmed.