CHARLES P. STETSON, and others, in equity,

*vs.*

WILLIAM H. H. EASTMAN, and others.

Penobscot.    Opinion March 25, 1892.

*Will.   Lapsed Legacy.   Joint-Tenants.   Descent.   Grandchildren.   R. S., c. 73, § 7; c. 74, § 10; c. 75, § 1, cl. 3; Stat. 1852, c. 295.   Stat. of Mass. March 7, 1786; Plymouth Colony Laws, 1643, Ed. 1836, p. 75.*

A bequest of personal property, to two or more persons individually named as legatees, without words indicating the nature of the tenancy to be created thereby, will be construed as creating a tenancy in common, and not a joint-tenancy. The law presumes that a tenancy in common was intended unless a different intention of the testator be manifested by the terms of the will.

A testatrix, in addition to other bequests, made to each of two persons a sep-
arate pecuniary legacy, and then gave the rest of her estate, mostly money
and personal effects, to both of such persons, by a residuary clause in these
words : "All the rest and residue of my estate I give to [the persons named]
and I appoint them executors of this, my will." One of such legatees died
in the lifetime of the testatrix. *Held :*

    1. That the separate gift to such deceased legatee lapses into the residue
of the estate.

    2. That the surviving legatee takes half of the residue as thus increased.

    3. And that the other half lapses, and goes to the heirs of the testatrix,
no other disposition being made of it by her will, subject to the expenses
incurred to obtain a construction of such bequests.

Our statute limits the rights of collateral inheritance by representation to the
grandchildren of a deceased brother or sister, another brother of the intes-
tate being alive. In such case the inheritance does not extend to the chil-
dren of grandchildren.

ON REPORT.

Bill in equity by the administrators of the estate of Abigail
J. Stetson, with the will annexed, to determine the construction
of the will. By agreement of the parties, the case was reported
to the law court to be heard on bill and answers under R. S.,
c. 77, § 43. Two questions were presented for decision, (1,)
whether the legacy of six thousand dollars to Hattie May Bach-
elder had lapsed by reason of her death before that of the testa-
trix, and (2,) to whom the administrators should pay the rest and
residue of the estate.

The facts are stated in the opinion.

*J. W. Symonds,* for Bernice M. Batchelder, as a residuary
legatee.

Practice : *Bachelder, Pet'r,* 147 Mass. 470.

Lapsed legacy : *Thayer* v. *Wellington,* 9 Allen, 295 ;
*Prescott* v. *Prescott,* 7 Met. 145 ; *Drew* v. *Wakefield,* 54
Maine, 291 ; *Kenniston* v. *Adams,* 80 Maine, 290 ; *Elliott* v.
*Fessenden,* 83 Maine, 204 ; *Bigelow* v. *Gillott,* 123 Mass. 102 ;
*Tindall* v. *Tindall,* 24 N. J. Eq. 513 ; *Burnett* v. *Burnett,* 30
N. J. Eq. 599.

The gift, contained in the residuary clause, of the rest and
residue of the estate to two persons named, without any words
of severance whatever, passes to the survivor of the two upon
the death of the other before the decease of the testator ; and

Bernice M. Bachelder, as survivor of the two, took the whole residue of the estate, consisting as it did, of personal property.

Joint Tenancy: *Crooke* v. *De Vandes,* 9 Ves. 204; 2 Williams Ex'ors, 1463; *Morley* v. *Bird,* 3 Ves. 629; *Decamp* v. *Hall,* 42 Vt. 83; 1 Rop. Leg. 330; 2 *Id.* 494; Schoul. Wills, § 566; 3 Jar. Wills, pp. 1, 2; *Gilbert* v. *Richards,* 7 Vt. 203; 2 Kent Com. p. *351, 12th ed; 2 Jar. Wills, 368; *Hooper* v. *Hooper,* 9 Cush. 130.

Revised Statutes, c. 73, § 7, relates to devises of land, leaving the common law rule, as to personalty in force. *Jones* v. *Crane,* 16 Gray, 308; *Anderson* v. *Parsons,* 4 Maine, 486; *Putnam* v. *Putnam,* 4 Bradf. 308; *Butler* v. *Butler,* 2 Mackey, (D. C.) 96.

*S. F. Humphrey,* for W. H. H. Eastman.

After the death of Hattie May Batchelder before the testatrix, her moiety of the rest and residue was held by her as tenant in common, and remains undisposed of by the will. R. S., c. 73, § 7; *Jones* v. *Crane,* 16 Gray, 308.

"Grandchildren" does not embrace more than children's children. Stat. 1852, c. 295; *Quinby* v. *Higgins,* 14 Maine, 309; Am. & Eng. Encyl. Title, Grandchild. *Oxford* v. *Churchill,* 3 Ves. & B. 59; 2 Williams Ex'ors, 1103; *Hone* v. *Van Schaick,* 3 Barb. Ch. 505.

*H. R. Chaplin and Peregrine White,* for others.

PETERS, C. J. Abigail J. Stetson, a resident of this State, by her will made and probated here, left numerous money legacies among which was one of six thousand dollars to Hattie M. Bachelder and one of three thousands dollars to Bernice M. Bachelder, and in addition she made those two persons her executors and residuary legatees. The residuary clause reads as follows: "All the rest and residue of my estate I give to Bernice M. Bachelder and Hattie M. Bachelder of Bangor, and I appoint them executors of this will." Her effects consisted mostly of personal property, evidently moneyed securities, there being only about two hundred dollars worth of real estate.

Hattie M. Bachelder dying in the lifetime of the testatrix, three days before the testatrix died, the inquiry is made by this

bill in equity, to which all persons possibly interested are made parties, whether the legacies to Hattie M. lapsed ; and if so, what disposition is to be made of them.

Undoubtedly the legacy of six thousand dollars lapsed, and sinks into the general residue of the estate.  It was by implication conditional upon the event that the legatee survived the testatrix.  The law presumes that just so much was taken from the general legatees for the benefit of the particular legatee, and the particular intent failing the general intent prevails.  The deceased legatee leaving no lineal descendant, section ten of chapter seventy-four of the Revised Statutes, does not alter this result.

There can be no doubt that, by the same rule, the deceased legatee's portion of the general residue of the estate also lapses, and that this portion falls to the heirs of the testatrix under the laws of descent and distribution, no other disposition of it being either expressly or impliedly provided by the terms of the will ; unless this result be prevented by construing the residuary clause as having the effect to constitute between the legatees named therein a joint-tenancy with the incident of survivorship, instead of a tenancy in common.  And it is contended in behalf of the surviving residuary legatee that the latter is the true construction of the clause in question.

Although it may be that the English courts would regard a clause like this as creating a legacy in joint-tenancy, and thus giving the whole of the residue to the surviving tenant, we cannot believe that such would be the construction in many of the states of this country, and we are convinced that such should not be the construction in our own State.  We think the presumption here is exactly the reverse of that recognized by the English courts.  Whilst in that country a devise or bequest to two or more persons implies a joint-tenancy unless the contrary appears, here it implies a tenancy in common unless a different intention is indicated by the will and the attending circumstances.  Our institutions and policies are averse to the doctrine of survivorship as applied to tenants holding in their own right, although there may be meritorious exceptions.  We

have as a people inherited a feeling of opposition to the principle from early legislative manifestations against it.

As early as in 1643, the general court of the Plymouth Colony expressed its disfavor of the principle by an act providing as follows : "That where lands or tennements fall in joynt partnership either by guift, graunt or purchase or otherwise, that if any of the partners do dye before the devision thereof shalbe made, That the heires & assignes of such as shall so decease shall not be deprived of the right title and interest into such said lands and tennements but shall have his or their proporçon as duly & equally as any of the survivors or their heires or assignes any act ordinance custome or provision made to the contrary in any wise notwithstanding as fully and amply as if devision thereof had been formally made." Plymouth Colony Laws, ed. of 1836, p. 75.

By force of the sixth clause of the sixth section of the constitution of the commonwealth of Massachusetts, this enactment continued to be the law of the commonwealth until its scope was enlarged by an act, passed on March 7, 1786, which provided that all grants and devises of real estate to a plurality of persons should be construed as creating tenancies in common, unless a contrary intention be indicated by the terms of the devise or grant. Our own statute is to the same effect, first enacted in 1821, now continued in R. S., c. 73, § 7, and running as follows : "Conveyances not in mortgage, and devises of land to two or more persons, create estates in common [and not joint estates], unless otherwise expressed. Estates vested in survivors on the principle of joint tenancy shall be so held."

There would be no question in the present case, on this point, if the gifts were of real estate and not of personal property ; but the argument for the person claiming as survivor is, that the statute was designed to include realty within its operation and exclude all other property. It seems incredible to us that any such distinction could have been contemplated. There is more reason for rejecting the offensive doctrine in its application to chattels or moneyed securities than in its application to landed estates. And great incongruity and inconvenience must

arise if applied to the one class of property and not to the other. The explanation of the apparent omission to embrace all kinds of property within the legislative interdiction is that the law-makers did not understand that the principle ever applied to any property other than real estate. Nor were they, in our judgment, mistaken in that supposition. The principle of survivorship was not extended to tenancies in chattels by the English courts until after the Massachusetts act of 1786, an act as binding on us as upon the courts in that commonwealth until we virtually adopted its provisions by an act of our own passed in 1821. Our ancestors little dreamed that any vitality was left in the principle after the colonial law of 1643.

The acts of 1643 and 1786 were intended more as declarations of principle, or declarations against a principle, than as undertaking to repeal any acknowledged and binding law. The English cases give no reason for maintaining the doctrine of joint-tenancy in chattels, excepting that of the analogy which exists between devises and bequests, and the very reason given for the adoption of the doctrine in that country forbids its adoption here. It exists there because there it is the law as applicable to real estate. It does not exist here because here it is not the law as applicable to real estate. It gained an ascendency in the English courts in about the beginning of the present century, having before that time been repeatedly doubted or denied. It never had growth or life in most of the American courts.

Mr. Jarman (2 Jar. Wills *253) considers the doctrine of survivorship, so far as applicable to money legacies and residuary bequests, as having been questionable until settled by Lord Eldon in *Crooke* v. *De Vandes*, 9 Vesey, 204, a case determined in 1803. The same author describes the instability of the general doctrine of joint-tenancy thus significantly : " A devise or bequest to several persons 'equally amongst them,' or 'equally,' or 'in equal moities,' or 'share and share alike,' or 'respectively,' or with a limitation to their heirs 'as they shall severally die,' or 'to each of their respective heirs,' or 'to their executors and administrators respectively,' or to several 'between' or 'amongst' them, or 'to each' of several persons,

has been held, in contradiction of some of the very early cases, to make the objects tenants in common." And the author adds: "The preceding cases evince the anxiety of later judges to give effect to the slightest expressions affording an argument in favor of a tenancy in common; an anxiety which has been dictated by the conviction that this species of interest is better adapted to answer the exigencies of families than a joint-tenancy, of which the best quality is that the right of survivorship may, at the pleasure of either of the co-owners (if personally competent), be defeated by a severance of the tenancy." Such is the English view of the doctrine. All other English writers on the subject seem to entertain the same opinion. It is said by Mr. Williams, the able English commentator, that the principal use of joint-tenancy in England now is for the purpose of creating estates in trustees, who are generally joint-tenants. Williams Real Prop. 111.

But the American view is much more emphatic than that expressed by English authors. Mr. Bigelow, the American editor of Jarman's work (4th ed. p. *251), says: "In America, the title by joint-tenancy is much reduced in extent, and the incident of survivorship is still further cut down, and generally limited to cases in which it is proper and necessary; as to cases of titles held by trustees, and to cases of conveyance or devise to husband and wife." This language is partially adopted from Chancellor Kent (4 Com. 400), who led off in stating similar views over sixty years ago, and other American authors, following in the same track, have conspired to enlarge rather than diminish the scope and extent of the American policy as advocated by him. Mr. Perry, perhaps, states the same thing as satisfactorily as any one, when he says: "In this country, title by joint-tenancy is very much reduced in extent and the incident of survivorship is almost entirely destroyed by statutes, except in the case of trustees, executors and others, in whom such a tenancy is necessay for the execution of their trusts." Perry Trusts (4 ed.), Vol. 1, § 136.

The doctrine of joint-tenancy and survivorship has many oppositions in its way. The law itself never creates joint-

tenancy. It never comes through the steps of descent or distribution. Parties alone can create the tenancy. The law in this respect allows parties to do what the law declines to do itself. The principle is emasculated by the privilege extended by the law to either joint-tenant to terminate the tenancy by a conveyance to a third person. As already seen, the law catches at straws to prevent its application to cases. Equity refuses to apply the principle except in clear cases. It is under legislative condemnation in most of the states, Maryland and South Carolina being, perhaps, the only exceptions. In this connection the words of Lord Hardwicke, uttered in 1742, are apropos : "It is true that, in this court, joint-tenancies are not favored, because they are a kind of estates that do not make provision for posterity ; neither do I take it that courts of law do at this day favour them ; although Lord Coke says that joint-tenancy is favoured because the law is against the division of tenures, but as tenures are many of them taken away, and in a great measure abolished, that reason ceases, and courts of law incline the same way with this court." *Hawes* v. *Hawes*, 1 Wilson (K. B.), 165.

The present question has not directly appeared in any adjudicated case in Massachusetts or Maine, that we know of. But there are a few cases approaching towards the question which bear unfavorably on the rule of joint-tenancies. Legislative grants to two or more persons vest the estate in such persons as tenants in common. *Higbee* v. *Rice*, 5 Mass. 344. The statute abolishing joint-tenures applies to estates created before as well as to those created after the enactment, if not vested estates. *Miller* v. *Miller*, 16 Mass. 59. A present of sandal wood from the King of the Sandwich Islands to the master of a vessel for its owners vests the title of the article in such owners as tenants in common. *Thorndike* v. *De Wolf*, 6 Pick. 120. A grant of land to two persons "jointly, to be equally divided between them," creates a tenancy in common by the statute if not at common law. *Burghardt* v. *Turner*, 12 Pick. 534.

Two cases in the Vermont reports are very much relied on by counsel as supporting the contention for joint-tenancy in the

present case. The cases evidently lean in that direction, although to our minds precisely the same results could have been reached in the cases without the aid of any presumption of joint-tenancy, and in fact in spite of any contrary presumption. The facts disclosed in *Gilbert* v. *Richards*, 7 Vt. 203, strongly indicate an intention of the testatrix in that case to create a joint-tenancy and not a tenancy in common, and the court says as much. It appeared that a testatrix gave to her three step-daughters, naming them, however, severally, certain family plate, pictures and musical instruments that came to her possession from her deceased husband who was their father. Two of the step-daughters died in the life-time of the testatrix, after which she made a codicil giving all lapsed legacies in her will to another person, making no reference to this bequest, and evidently not supposing her codicil applicable to this bequest. It was reasonable to suppose that she gave the articles to her husband's children as a class of persons, as a family, not intending any severance of the articles between them. The articles were of peculiar rather than of pecuniary value, and hardly capable of any just and perfect division, the court said. And the court further said : "It was, therefore, altogether desirable that these sisters should have the property as joint-tenants and that it should not be subject to a division. And furthermore it is not to be believed that, at the time of the making the codicil, when two of the sisters were dead, the testatrix could have intended that the property so valuable to the children and of so little comparative value to any one else should be divided between the surviving daughter of her husband and a relation of hers not of kin to that daughter." The other case in the same state is *Decamp* v. *Hall*, 42 Vt. 83, in which it appears that a testator gave an estate to a person for his life-time and then over to the two sons of such person. The court said that, if the estate to the two sons were to be regarded as a tenancy in common, the queer spectacle would be presented of a legatee having, by the death of his son, an absolute fee in an estate, although his interest was expressly limited by the testator to a life-estate therein.

We are not to be understood as opposing or deprecating the maintenance of joint estates, created by devise or deed, when the testator or donor intentionally constructs such an estate. On the contrary, it is the actual intention that we would ascertain if possible and be governed by it. The case of *Anderson* v. *Parsons*, 4 Maine, 486, cited by counsel, is an illustration of the extent to which the court may go to carry the intention of a testator into effect, in which case the theory of a joint-tenancy of real estate prevailed as having been actually intended by the testator. And still, we should not regard that as so strong a case in its facts for the application of the principle of survivorship as either of the cases cited from the Vermont reports. The divergence between the learned court of that state and ourselves is that, whilst the principle of survivorship is by them apparently admitted, although as appears to us, not necessary to the results arrived at in their cases, we do not admit that the principle, as interpreted by the English courts, now exists or ever did exist in our jurisdiction. We do not contend that the doctrine is never applicable, but that it is not generally so. There are special cases where the principle has a most useful adaptation. Where the will speaks, that governs; but where the will is silent the law speaks and declares the intention of the testator. It declares for tenancies in common — in equality.

In the present case, there is nothing of any amount that could be construed as having a tendency to overcome the presumption of a tenancy in common, although there are facts which appear to confirm such presumption. The residuary legatees were not related to each other, one being a relative of the testatrix and the other the wife of another relative of hers. They lived separately and were of different families. Besides the bounty to be received by them through the residuary clause, each was separately made a legatee for another large sum by the will. And the amounts to be thus receivable were not alike.

The other question, as to who shall be the inheritors of the lapsed fund, is not difficult. The testatrix had no child. At her death, she had neither husband, father, mother nor sister

living. One brother survived her. There were no children or grandchildren of any deceased brother or sister. One great-grandchild of a deceased sister was living. The testatrix also left cousins. No claimants appear excepting the brother of the testatrix and her deceased sister's great grandchild. The brother must receive the fund, as the other relationship is excluded from participation on account of its remoteness. The statute limits the right of inheritance by representation to the grandchildren of a deceased brother or sister, another brother being alive. R. S., ch. 75, § 1, clause 3. Formerly grandchildren were excluded from such right of representation. *Quinby* v. *Higgins,* 14 Maine, 309. See Laws 1852 ch. 295. The term children, as used in our statute, does not comprehend grandchildren, nor does the latter term comprehend the children of grandchildren. The statute means just what it says. It would have said more if more had been intended. Sometimes a testator uses the word children, meaning issue, and it is difficult even in that case to effectuate the intention of such testator. The proof of it, to be collected from the whole will, must be plenary. No such latitude is allowable in construing a statute.

The result is that the lapsed legacy of six thousand dollars will be added to the residuary fund, and that such fund thus increased will be equally divided between the living residuary legatee and William H. H. Eastman, the brother of the testatrix.

We think the portion thus falling to Eastman can well afford to pay the costs and expenses of this litigation, which will comprise counsel fees on both sides and disbursements expended by any of the parties. *Decree accordingly.*

WALTON, VIRGIN, EMERY, FOSTER and HASKELL, JJ., concurred.