ASAHEL W. SAWYER & another, executors, *vs.* JAMES
H. FREEMAN & another.

Suffolk.    March 16, 1894. — June 21, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP,
& BARKER, JJ.

*Will — Waiver by Widow — Disposition of Principal and Income of Trust.*

A testator by will gave to executors a certain sum in trust to pay or expend the
income so far as practicable to or for his widow, A., during life, and upon her
death to pay the entire sum and all income thereof then in their hands to her
daughter, B., and if not then living, to pay said sum and income to the issue of
B., if she should leave issue surviving A., but if neither B. nor any issue of hers
should survive A. then said sum and income should go to the residuary legatee.
All the other legacies in the will were pecuniary ones; and A., the widow, hav-
ing waived the provisions of the will, there remained after payment of her
thirds and the allowances made by court and the expenses of administration a
sum sufficient to pay but a little over sixty-eight per cent upon all the legacies.
*Held,* that the income upon sixty-eight per cent of the sum given in trust was
to be accumulated until the death of A., and then the entire fund, principal and
income, was to be paid to B if living, and if not living then as directed in the
above clause of the will. FIELD, C. J., ALLEN & KNOWLTON, JJ., dissenting
as to the disposition of the income.

PETITION to the judge of probate of the county of Suffolk,
by Asahel W. Sawyer and James Henry Freeman, executors
of the will of James H. Freeman, late of Boston, deceased, al-
leging that the estate was so far settled that nothing remained
to be done but to pay the legacies given, and administer the
trust created by the will; that the legacies had been paid in
part; that the widow, Amanda Maria Freeman, named in the
will, who had waived the provisions made for her therein, had
been paid in full her thirds, and the allowances made to her by
the court; that the expenses of administration had also been
paid in full; that the estate could pay but a little over sixty-
eight per cent upon the legacies; and that the petitioners were
desirous to pay the legacies as far as the estate would pay them,
settle their accounts, and administer according to law the trust
imposed upon them, which was in the following words, viz.:
" I give to the executors of this will hereinafter named, and the
survivor of them, the sum of eight thousand dollars, in trust

nevertheless to invest the same and collect the income thereof and therefrom, and pay or expend such income semiannually so far as may be practicable to or for Amanda Maria Freeman, formerly Amanda Maria Farrington, of Franklin, in the county of Norfolk and said State of Massachusetts, so long as she shall live, and upon the death of said Amanda Maria Freeman to pay the whole of said sum of eight thousand dollars and all income thereof then in their hands to Julia Ann B. Lewis, her daughter, named in the following clause of this will, and in case said Julia Ann B. Lewis shall not be living at the death of her mother, then to pay said sum and income, share and share alike, to the issue of said Julia Ann B. Lewis if she leave issue who survive said Amanda Maria Freeman; but if neither said Julia Ann B. Lewis nor any issue of hers shall survive said Amanda Maria Freeman, then said sum of eight thousand dollars and income shall be held to be part of the rest, residue, and remainder of my property, and go and be paid to my nephew James Henry Freeman, hereinafter named."

Julia Ann B. Lewis contended that the same proportion of the eight thousand dollars so given in trust as was paid upon the other legacies given by the will should be at once paid over to her, or, if not, that said proportion be invested and the income therefrom be paid to her until the death of Amanda Maria Freeman named in the will, when said proportion should be disposed of as directed by the will. James Henry Freeman, one of the executors, contended that the same proportion of the eight thousand dollars so given in trust should be invested and the income therefrom paid to him as residuary legatee as undevised property until the death of Amanda Maria Freeman, when said proportion should be paid over as directed by the will. All the legatees named in the will except Julia Ann B. Lewis and James Henry Freeman, contended that the same proportion of the eight thousand dollars so given in trust, should be invested, and the income therefrom paid to all the legatees except the widow, Amanda Maria Freeman, proportionally to their several legacies, until the legacies were paid in full, or until the death of Amanda Maria Freeman, when the whole of said proportion should be paid over as directed by the will. The will contained seven pecuniary legacies, five of which were to a

nephew and nieces and the daughter of a niece, and James Henry Freeman, one of the executors, was named residuary legatee.

The judge decreed that the executors should pay over to "Julia Ann B. Lewis the same proportion of said eight thousand dollars ($8,000), given in said trust as aforesaid, as is paid upon the other legacies given by said will, together with whatever income may have accrued thereon in their hands, in full discharge of said trust, and said trust shall thereupon be discharged"; and James H. Freeman appealed to this court.

The parties in interest filed the following agreement:

"It is hereby stipulated and agreed that Amanda Maria Freeman, widow of the testator, waived the provisions made for her in the will, and has been paid her allowances made by the judge of probate of $2,200, and her one third of the estate, which was all personal property, $6,342.64, both amounting to $8,542.64; that the net cash of the estate of the testator to pay all the legacies of the will, including the trust fund, the disposition of the income of which during the life of the widow is in question, was $21,228.03; that the total amount of the legacies, including said trust fund, was $18,500; that, deducting the $8,542.64, the amount of the widow's allowances and her one third of the estate, from net cash of the estate, $21,228.03, there is left but $12,685.39 with which to pay all the legacies, amounting to $18,500; that this sum of $12,685.39 pays only a little more than sixty-eight and one half (exactly 68.569189189) per cent of all the legacies, amounting to $18,500, leaving nothing for the residuary legatee; that the estate is fully settled, and all the legatees paid the proportional part of their legacies which the estate is able to pay, except that the executors named as trustees are to properly dispose of the trust fund and the income thereof, which fund is now sixty-eight and one half and a fraction per cent of $8,000, or $5,485.57; that had the widow accepted the terms of the will there would have been the sum of $21,228.03 with which to pay all the legacies, amounting to $18,500, thus leaving to the residuary legatee the sum of $2,728.03."

Julia Ann B. Lewis, the appellee, was at the death of the testator his only child, and of course his sole next of kin, and only heir at law. She has a son living about fourteen years of age.

On motion of the executors, Ray F. Lewis, a minor and only child of Julia Ann B. Lewis, was admitted as a party, and Samuel Williston, Esq. was appointed his guardian *ad litem*, and to represent the interests of persons not in being.

Hearing before *Knowlton*, J., who was of opinion that the decree of the Probate Court should be set aside, and sixty-eight and one half per cent of $8,000, viz. $5,485.57, be held by the executors until the death of Amanda Maria Freeman, and then paid over to Julia Ann B. Lewis if she were then living, and if she were not then living to her issue, if she should leave issue surviving Amanda Maria Freeman ; but if neither she nor any of her issue should survive Amanda Maria, then to James Henry Freeman ; that the income of this fund should be divided among the legatees whose legacies were diminished by the widow's waiver in proportion to the amounts which they had respectively contributed to the share of the widow, and that the portion applicable to this legacy of $8,000 should be paid over to the same persons to whom the principal was paid ; and if the whole amount contributed by the legatees should be made up by this distribution of income, the income accruing after that time should be paid to James H. Freeman, the residuary legatee.

At the request of the parties, the justice reserved the case for the consideration of the full court.

The case was argued at the bar in March, 1894, and afterwards was submitted on the briefs to all the judges.

*H. G. Parker*, for James H. Freeman.

*S. Williston*, guardian *ad litem*, for Ray F. Lewis, and possible contingent interests.

*G. W. Wiggin*, for Julia Ann B. Lewis.

HOLMES, J. If the income during the life of the widow is not disposed of otherwise, it is part of the residuary fund, and as such is applicable to the payment of the pecuniary legacies. The residuary legatee has no claim until those legacies are satisfied. *Blaney* v. *Blaney*, 1 Cush. 107, 117. *Firth* v. *Denny*, 2 Allen, 468, 471.

Whatever is given to the daughter, Julia Ann B. Lewis, income as well as principal, is given her " in case said Julia Ann B. Lewis shall not be living at the death of her mother." Until

that time, although her interest is vested, nothing is given to her unconditionally.    Income and principal stand on the same footing.    Under our decisions at least, we cannot read " at the death of her mother " as meaning whenever, either at or before the death of her mother, the interest of the latter shall come to an end.    *Brandenburg* v. *Thorndike*, 139 Mass. 102. Therefore the daughter is not now entitled absolutely to the income by acceleration, assuming that we should apply that doctrine in the case of a gift for life with a remainder over not subject to be devested.    *Vance's estate*, 141 Penn. St. 201, 210.    *Yeaton* v. *Roberts*, 28 N. H. 459.    *Holderby* v. *Walker*, 3 Jones Eq. 46.    *Macknet* v. *Macknet*, 9 C. E. Green, 277.    See *Upham* v. *Emerson*, 119 Mass. 509, 513.    If then the income during the widow's life is not given in express terms with the fund from which it comes, it is to be applied to the pecuniary legacies.

The question whether it is so given is a doubtful one.    If it is, the words which do it are " and all income thereof then in their hands."    It is possible, if not likely, that the testator when he used those words was thinking only of such income as the trustees did not happen to have laid out at the widow's death in the ordinary course of expenditure under the trust, and that he was not thinking of the overthrow of his scheme for the whole previous time by his widow's waiving the provisions of the will.    But it has been said that a testator must be taken to have contemplated the possibility of a waiver.    *Upham* v. *Emerson*, 119 Mass. 509, 513.    And if that ever is to be assumed, there are unusual reasons for making the assumption in this case.    The way in which he mentions his wife suggests that he is dealing with her somewhat at arm's length.    He does not call her his wife, but " Amanda Maria Freeman, formerly Amanda Maria Farrington, of Franklin, in the county of Norfolk "; a noticeable contrast to his way of speaking of his nephews and nieces, whom in the legacies given to them he calls nephews and nieces.    He gives her nothing outright, but only an equitable life interest in eight thousand dollars, less than half of an estate of less than twenty thousand dollars.    The nature of the gift is such that the widow almost was invited to consider whether she would not waive it, and the manner of it suggests

that the testator may have had the chance of her doing so in his mind.

Taking the language of the will literally, the income goes with the principal: " upon the death of said Amanda Maria Freeman to pay the whole of said sum of eight thousand dollars and all income thereof then in their hands to Julia Ann B. Lewis, her daughter." The same language is repeated in substance, showing that income as well as principal was steadily before the testator's mind : " in case said Julia Ann B. Lewis shall not be living, . . . then to pay said sum and income," and again in the last event " said sum of eight thousand dollars and income shall be held to be part of the rest, residue, and remainder." There does not seem to be any sufficient reason for limiting the income disposed of to income in the hands of the trustees for one cause only. It seems to be safe to give the language its literal force, and to read it as meaning all income of the fund which has accrued since the testator's death, and which for any reason remains unexpended or not paid over to the widow. It is not very useful to conjecture what the testator had in his mind. It often happens that a residuary clause passes property which the testator intended and directed to go a different way. *Batchelder, petitioner*, 147 Mass. 465, 468. The words " all income thereof then in their hands " are a sort of special residuary clause for that fund, and there seem to be similar reasons for treating them as a drag-net within the sphere of their operation. *Brandenburg* v. *Thorndike*, 139 Mass. 102, 104.

The income is to be accumulated until the death of the widow, and then the entire fund, principal and income, is to be paid to the daughter if she is living at that time. If she is not then living, then as directed in the clause of the will which we have construed.          *Decree accordingly.*

The Chief Justice and Justices Allen and Knowlton dissent from this opinion. Their view of the case is as follows. The widow by her waiver took certain property from other legatees and gave up her own legacy. Except as the waiver necessarily modifies it, the will is to be given effect as nearly as possible according to its terms to carry out the intention of the testator.

He gave his widow the income of $8,000 for her life. What he gave in the same clause to his daughter or to her issue, or, if they should not survive his widow, to his residuary legatee, was only the principal sum of $8,000, and any income which might accrue after the payments regularly made to his widow before her death. The payments were to be made so far as practicable semiannually, and the entire accrued income belonged to her as the time for each payment arrived. There would probably be in the executor's hands at the time of her death a small amount of income which accrued after the last payment. This with the principal was given over. The income which accrued previously was the widow's legacy, and if the will was given full effect, no part of it would go to any one else. If the testator thought of the possibility of its being waived by the widow, he must be presumed to have expected that it would be used as the law uses such legacies in cases of waiver by a widow, to make up so far as possible the legacies which are diminished to furnish her with her distributive share of the estate.

The fact that the renounced legacy is in the form of income furnishes no reason why it should not be used to reimburse the pecuniary legatees proportionally so far as possible for the sums contributed by them to the share of the widow. The words " income thereof then in their hands " cannot have one meaning if the will is allowed to operate as the testator intended it should, and a different meaning if some of its provisions are set aside by the widow.