ALBERT W. CROCKER & another, trustees, *vs.* ANNIE L. CROCKER & others.

Middlesex. November 20, 21, 1917. — June 25, 1918.

Present: RUGG, C. J., BRALEY, PIERCE, & CARROLL, JJ.

*Devise and Legacy.*

A testator by the residuary clause of his will gave the residue of his property to trustees, to pay one third of the net income to his widow during her life, to a nephew and a niece named each the sum of $1,500 a year during the term of their lives, to a certain charity the sum of $1,500 a year "and the balance of the income of the principal of the trust estate, quarterly, in equal shares to my said nephew . . . and to my said niece . . . during the term of their lives." He further provided as follows: "In case either my said nephew or my said niece dies before my said wife then I direct my said trustees to pay one third of the net income of the trust estate which the deceased received during his or her lifetime to the survivor, quarterly, for and during the term of his or her life, and one third to my said wife, quarterly, during the term of her life, and one third semiannually in equal shares to" two charities named. The testator's widow waived the provisions for her in the will. After the death of the testator the nephew named in the residuary clause died, and, the widow still surviving, the trustees brought a bill for instructions. *Held,* that the third of the income of the trust fund made payable to the testator's widow, by reason of her waiver, fell into the residue of the income and was to be distributed under the provisions quoted above in regard to "the balance of the income," which was the true resi-

due of the income, and that the half share of the final income which had been payable to the nephew before his death must be distributed as intestate property, there being no provision of the will in regard to it, as a legacy which is a part of a residue lapses on the death of the legatee before its vesting and cannot again fall into the residue.

In the case above described it was *pointed out* that the will disclosed no reason for invoking the rule, which sometimes is called inaccurately the satisfaction of disappointed legatees, as illustrated by *Shreve* v. *Shreve*, 176 Mass. 456.

BILL IN EQUITY, filed in the Probate Court for the county of Middlesex on October 28, 1916, by the surviving trustees under the will of William B. Spalding, late of Lowell, who died on March 9, 1912, for instructions as to the distribution of income under the trust created by that will.

The Probate Court made a decree, from which Annie L. Crocker appealed. On appeal the case was heard by *Crosby*, J. The facts are stated in the opinion, where the material portions of the will are quoted. The single justice made a final decree, from which Annie L. Crocker and the Lowell General Hospital appealed.

*H. F. Atwood & H. L. Brown,* for the defendant Annie L. Crocker.

*F. E. Dunbar,* for the Lowell General Hospital, adopted as his brief the brief for Annie L. Crocker.

*C. L. Newton,* for the defendant Myra N. White.

*F. P. Marble,* for the Lowell Humane Society, adopted as his brief the brief for Myra N. White.

*L. M. Bacon,* for Myra N. White as the administratrix of the estate of Edward H. Nichols, submitted a brief.

RUGG, C. J. This is a bill for instructions brought by trustees under the will of William B. Spalding, who died in 1912 leaving a widow and as his next of kin a nephew, Edward H. Nichols, since deceased, and a niece, Annie L. Crocker. His widow waived the provisions of the will and still survives. Her waiver causes doubt as to the disposition of the estate under the will. It is apparent from other clauses of the will that there is to be no final distribution of the estate at least until after the death of the wife. The clauses governing the issues now presented are in these words:

"Fifth: — All the rest, residue and remainder of my estate both real and personal I give, devise and bequeath to my nephew Edward H. Nichols of Brookline in the County of Norfolk, Albert W. Crocker and Frederick Bailey both of said Lowell and their

successors, in trust, to hold and manage the same and dispose of the income thereof in the following manner: — I direct my said trustees to pay to my wife Mary E. Spalding during the term of her life, one-third of the net income of the principal of the trust estate herein created, quarterly, or as much oftner as they deem best; to my nephew Edward H. Nichols of said Brookline and to my niece Annie L. Crocker wife of Albert W. Crocker of said Lowell each the sum of Fifteen hundred dollars during the term of their lives; to the Lowell Humane Society of Lowell, Mass., semiannually, or as much oftner as they deem best the sum of Fifteen hundred dollars; and the balance of the income of the principal of the trust estate, quarterly, in equal shares to my said nephew Edward H. Nichols, and to my said niece Annie L. Crocker during the term of their lives."

"Eighth: — In case either my said nephew or my said niece dies before my said wife then I direct my said trustees to pay one third of the net income of the trust estate which the deceased received during his or her lifetime to the survivor, quarterly, for and during the term of his or her life, and one third to my said wife, quarterly, during the term of her life, and one third semiannually in equal shares to said Lowell Humane Society and said Lowell General Hospital."

The cardinal and familiar rule in the interpretation of wills is to ascertain from the testamentary words, construed according to their natural meaning, the intent of the testator and then to give effect to that intent unless prohibited by some positive rule of law. It is manifest from this will that the testator made no provision for the event which has happened, namely the waiver by his widow of the provisions made by the will for her benefit. It is to be presumed, however, that the testator had in mind the possibility that she might pursue that course and knew that he could not by his will prevent her from doing so. *Upham* v. *Emerson*, 119 Mass. 509, 513. *Sawyer* v. *Freeman*, 161 Mass. 543, 547. It is not for the court to speculate as to what the testator might have done if the exact situation which has arisen had in truth been in his mind when making his will, but to determine the meaning of the words actually used and apply that meaning to the facts presented.

The effect of the waiver by the widow and the assertion of her statutory rights is to reduce the estate available for the payment of

legacies. Other legatees must lose as a result of her action. The consequence, in the absence of expression of testamentary intent to the contrary, is that the loss must fall upon the residuary legatees because no definite sum or specific legacy is given to them. They take whatever is left undisposed of by other provisions. *Firth* v. *Denney*, 2 Allen, 468, 471. *Pace* v. *Pace*, 271 Ill. 114, 120, 121.

Clause Fifth of this will is a true residuary clause in form and substance. But it has within itself preferences and provision for a final residue: one third is given to his widow; three annuities, each of $1,500, are given to three different persons and "the balance" which in this connection is equivalent to a gift of the final rest, residue and remainder is divided equally between his niece and nephew. The word "balance" in its collocation is broad enough to include the income which but for her waiver would have gone to the widow. It is natural to presume that such income, undisposed of directly in the event which has occurred, should go to the residuary legatees in preference to others. That is the effect of the words which now have become operative. *Chase* v. *Dickey*, 212 Mass. 555, 565. *Batchelder, petitioner*, 147 Mass. 465, 468. *Thayer* v. *Wellington*, 9 Allen, 283. *Blight* v. *Hartnoll*, 23 Ch. D. 218. Since the widow has waived its provisions in her favor, the will is to be interpreted as if it contained no provision for her. *Brandenburg* v. *Thorndike*, 139 Mass. 102.

The reasonable interpretation of the fifth clause, which alone was operative up to December 16, 1913, when the nephew died, is that the three annuities shall be paid in full and that the entire rest, residue and remainder of the income shall be divided equally between the nephew and niece.

For the period since December 16, 1913, the eighth clause also must be considered. Disposition there is made, in the event of the death of either the niece or the nephew during the life of his wife, of the share in the net income theretofore received by the one deceasing. The net income received by the nephew during his life was made up of the $1,500 annuity and one half the income of the final residue. The provision of Clause Eighth is that one third of this total share shall go to the survivor, one third to the wife, and one third equally to two charities. The provision for the wife is as if never made because of her waiver. Its distribu-

tion must be determined. That clearly falls into the residue of the estate and is governed by the terms of the residuary clause. Under the terms of that clause one half the final residue goes to the niece and one half to the nephew. But the nephew cannot take because dead. As to that share of the income there is intestacy. No provision is made by the will for the contingency which has happened. The residuary clause itself is silent in this particular. Where a legacy lapses which is a part of the residue it cannot fall again into the residue. It must pass as intestate property. *Lyman* v. *Coolidge*, 176 Mass. 7. *Dresel* v. *King*, 198 Mass. 546.

This is not a case where the waiver by the widow works acceleration of other shares, because the scheme of the will in its other clauses makes plain the testamentary desire that the ultimate disposition of the trust shall not become operative until the death of the wife, niece and nephew.

This is not a case for the application of the rule as to equitable compensation to legatees, disappointed in realizing the full benefactions provided by the testator because of his widow's waiver and the consequent depletion of the share they would otherwise receive. Loss resulting in that way to particular legatees ought to be apportioned as nearly equally as may be upon other legatees unless a different purpose is established by the will. *Firth* v. *Denny*, 2 Allen, 468. *Plympton* v. *Plympton*, 6 Allen, 178. But the general rule in this class of cases, already alluded to with supporting authorities, is that there is a presumption that such loss was intended to fall on the residuum unless a different purpose is disclosed by the will. This rule is the one applicable to the facts here disclosed. Reading the will with all reference to the widow eliminated, there is not any manifest method under the present circumstances to apportion the loss in a way to effectuate a testamentary purpose shown by the words used. It is more consonant with the general purpose of the testator, in view of the fixed rules of law with reference to which his will must be interpreted, not to invoke the rule often denominated satisfaction of disappointed legatees. Indeed, it would seem that disappointment in expectation is not the true ground for conferring a right to contribution, and that such right is raised only when, if not allowed, the purpose of the will is defeated, as for example in *Shreve* v. *Shreve*, 176 Mass. 456. That case is distinguishable from the case at bar. That was a case where

as between two children of the testator the will manifested a plain purpose to make a proportional distribution. The waiver of the widow, considered by its effects alone, wrought a great disturbance of that proportion. In order to preserve that proportion and thus effectuate the intent of the testator, it was necessary to apply the principle of satisfaction of disappointed legatees. A somewhat similar decision is *Adams* v. *Legroo*, 111 Maine, 302. The present case is different in the general frame of the will.

The decree of the single justice must be modified in 3 (b) by substituting "one half (½)," being the one third (⅓) due her by the express terms of Clause Eighth as her share of the part formerly received by Edward H. Nichols, plus one sixth, being the one half, due her under the terms of the residuary part of Clause Fifth, of the one third share given by Clause Eighth to the widow of the part formerly received by Edward H. Nichols, which one third share has fallen into the residue by the widow's waiver, for "one-third (⅓);" and in the clause indicating the share to Annie L. Crocker and Myra N. White as heirs at law, by striking out "one third (⅓)" and substituting therefor "one sixth (⅙);" and as thus modified is affirmed.

*Decree accordingly.*