13066

TORRE *ET AL* v. CHESNUT *ET AL*.

(156 S. E., 906)

March, 1930.

*Mr. W. R. Symmes,* for William Taylor Chesnut, Jr.,

*Mr. Paul M. MacMillan,* for First Presbyterian Church, respondent,

*Mr. H. W. Conner,* for James Chesnut *et al.,* respondent,

*Messrs. Huger, Wilbur & Mouzon,* for Thomas della Torre et al., executors,

February 10, 1931.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This is an appeal from a decree of his Honor, Judge Grimball, construing a certain feature of the will of Mrs. Alexina Chesnut Holmes, affecting adversely the claims of the appellants Edna E. Miller, James G. Chesnut, and William Taylor Chesnut, Jr., children of William T. Chesnut, Sr., a brother of the testatrix, who predeceased her.

The situation is quite complicated, but may be grasped by careful attention to the following undisputed facts:

Mrs. Alexina Holmes died on March 8, 1929, leaving a very large estate, over $200,000, and a will which was duly

admitted to probate in Charleston County; the plaintiffs, Thomas della Torre and Gordon Miller were appointed and duly qualified as executors thereunder.

After a number of devises of real estate and specific legacies of personal property, which are not involved in the present controversy, the will provided:

, "I give, devise and bequeath all the rest, residue and remainder of my estate wheresoever situate, to my executors, or such of them as shall qualify, in trust to sell and dispose of the same as soon as practicable after my death, and to dispose of the net proceeds of sale as follows: * * * "

Then followed a list of 25 pecuniary legacies, ranging from $500 to $30,000, and aggregating $137,000; included among them were pecuniary legacies of $30,000 to her brother W. T. Chesnut, $30,000 to her brother James Chesnut, and $25,000 to her sister Ellen W. Chesnut.

The will provided:

"But if the net proceeds of the sale of the residue of my estate shall not. be sufficient to pay all of the aforesaid legacies in full, it is my will (and I so direct) that the legacies to my brothers and sister shall not abate, but shall first be paid in full before any of the other legacies above provided for are paid."

It also provided:

"If any balance shall remain in the hands of my executors after the payment of the aforesaid legacies, I give, devise and bequeath the same to my brothers W. T. Chesnut and James Chesnut and to my sister Ellen W. Chesnut, or to such of them as shall be living at the time of my death, in equal shares."

The brother W. T. Chesnut, to whom the legacy of $30,000 had been bequeathed, died in August, 1928, several months prior to the death of Mrs. Holmes in March, 1929. The main issue in the appeal is the proper disposition of the legacy to W. T. Chesnut.

The appellants, children of W. T. Chesnut, contend that the legacy did not lapse, but that it devolved upon them as his heirs at law, according with the manifest intention of the testatrix; alternatively they contend that if lapsed, it became intestate property distributable among the heirs at law of the testatrix, including themselves.

The case was referred to F. K. Myers, master, by a general order of reference. On January 18, 1930, he filed a report holding that the legacy to W. T. Chesnut lapsed by reason of his death before that of the testatrix, and, in effect, that as the legacy was a part of the residuary estate, after the specific devises and legacies contained in the earlier part of the will, bequeathed to the executors in trust to pay the 25 pecuniary legacies, it should remain as a part of that residuary fund and devoted to the payment of the legacies to those other than W. T. Chesnut; and that if any part of the residuary fund, including the W. T. Chesnut legacy, remained, such balance should be paid to the sister Ellen W. Chesnut, the brother James Chesnut, and the children of W. T. Chesnut under the final clause of the will above set forth disposing of said balance.

The matter then came on to be heard by his Honor, Judge Grimball, upon exceptions to the Master's report. On March 19, 1930, he filed a decree sustaining the conclusions of the Master, expressing a doubt whether the children of W. T. Chesnut were entitled to share in the balance that might remain after payment of the 24 legacies, but holding that as there were no exceptions to this part of the Master's report, it was the law of the case. The improbability of there being any such balance, referred to as a probable or possible "pittance," renders the question of little significance, though we may add that we sympathize with the doubts of the Circuit Judge in reference to the participation by the children of W. T. Chesnut in the "pittance."

From this decree the defendants, children of W. T. Chesnut, have appealed raising practically the contentions above indicated.

Strictly speaking, the provision in the will in favor of W. T. Chesnut is not a pecuniary legacy, but a beneficial interest to the extent of $30,000, in a trust fund in the hands of the executors as trustees, the fund being the proceeds of a conversion into money of all of the estate that remained after taking care of the specific devises and specific legacies provided for in the preceding portion of the will.

The same result, however, follows whether the provision be considered the creation of a beneficial interest in a trust fund or a pecuniary legacy; under either view the beneficiary or legatee did not live to enjoy an investiture of it, and a lapse necessarily resulted; the further disposition of it depended upon the existence of an ulterior designation of it upon the lapse, which might have been accomplished by a provision in the will or by the creation of a residuary estate into which it would have been submerged.

It seems clear that there is contained in the will no ulterior direction for the fund to take in the event of a lapse of any one of the special beneficial interests or legacies; and unless there be a general residuary clause in the will under which certain persons named may be entitled to take, the provision for W. T. Chesnut is either a beneficial interest in a trust fund or a pecuniary legacy which has failed, and upon its lapse by reason of the death of W. T. Chesnut during the life of the testatrix, at her death it became intestate property distributable among her heirs-at-law.

In 1 Perry, Trusts (7th Ed.), § 160, it is said:

"Where a gift is made upon trusts that are void in whole or in part for illegality, or that fail by lapse or otherwise, during the life of the donee, a trust will result to the donor, his heirs or legal representatives, if the property is not otherwise disposed of. Thus where the gift * * * fails by death of some beneficial donee or *cestui que trust,* a trust to the extent of the estate given, will result to the donor or his heirs or legal representatives, if it is not otherwise disposed of. If the purposes of a trust fail * * * the

trustees hold the estate for the heirs at law as a resulting trust. * * *"

There appears to be no doubt but that, as Mr. Perry states in Section 160a:

"The donor, settlor, or testator still retains such an interest in property given by him in trust, that the interest which results upon the failure of the trusts created by him may be devised by him, and the question in each case is whether the resulting interest becomes a part of the residue and passes to the residuary legatee, if there is one, or whether it passes to the heirs."

In other words, the testatrix in this will might have provided that in the event that W. T. Chesnut predeceased her, the interest bequeathed to him should devolve upon his children or be given any other direction optionable with her; or she might have provided a general residuary clause which would have directed the disposition of all property not passing by the will. As we view the matter, she did neither, and as a consequence, the amount bequeathed to W. T. Chesnut out of the first residuum (what remained after providing for the devises and bequests contained in the earlier part of the will) became intestate property distributable among the heirs-at-law of the testatrix. In other words, it was, by the lapse, completely withdrawn from the trust fund represented by the first residuum as explained, and lost all connection or communion with it and the other beneficiaries under that clause.

The first suggestion of a residuary clause in the will occurs in that portion which directs the conversion into money of the entire estate which should remain after the completion of the devises and bequests in the earlier part of the will. That, of course, in a sense, is a residuary clause, but it is not a general residuary clause; it disposes only of that particular residuum which is constituted a trust fund, in the hands of the executors out of which they are directed to pay certain persons named certain sums of money. There

is no indication in the will that in the event that there should be a lapse of any interest, the amount of that interest should become a part of the residuum. The testratrix does not seem to have considered the possibility of a lapse and therefore appears to have made no provision for it.

The necessary result of the conclusion of the master, confirmed by his Honor, the Circuit Judge, is to make the lapsed interest of W. T. Chesnut (trust or legacy) a part of the residuary clause created by the paragraph of the will under consideration. The conclusion is thus expressed in the decree.

"I am of the opinion that the Master is correct in his conclusion that the lapsed legacy to W. T. Chesnut, in the sum of Thirty Thousand Dollars, should first be applied towards the payment of the other specific, particular, monetary legacies, giving the preference to the payment of the legacies of Thirty Thousand Dollars to James Chesnut and Twenty-five Thousand Dollars to Ellen W. Chesnut, the brother and sister of the testatrix: 'then to all other named legatees who survived testatrix the amounts provided for them in full, or ratably, the suggestion being made that the estate may not realize a sufficient sum to pay legatees in full.' "

That can mean only that the lapsed interest is thrown back into the residuum for the benefit of the beneficiaries therein named regardless of the fact that there is no such direction in the will and no general residuary clause.

"A gift of 'what shall be left,' where apparently applying to a certain fund, will not be construed to constitute a general residuary clause, but to signify merely what is left of a particular subject." 44 L. R. A. (N. S.) 808 (Note).

"And it has been held that a lapsed legacy is not included in a residuary bequest of a particular fund or description of property or other certain residuum." *Id.*

"To the rule that a general residuary clause will carry lapsed or ineffectual bequests of personal property, and also devises of real estate,—when this rule also applies to real

estate,—there is the exception that lapsed or ineffectual legacies or devises of a portion of the residuary estate itself, where the residuary clause is to several devisees or legatees in common, does not inure to the benefit of the remaining residuary legatees or devises, but the interest of the deceased becomes intestate estate, and as such passes to the next of kin or heirs at law of the testator." 44 L. R. A. (N.S.) 811 (Note).

"If in a residuary clause there is an enumeration of all the property intended to be passed thereby, the import of the general words of the residuary clause will be limited to such property, and it will not include a lapsed or void devise or bequest of other property. 44 L. R. A. (N. S.) 808 (Note.)

*In Hamlet v. Johnson,* 26 Ala., 557, it is held that a lapsed legacy of a part of the residuum passes to the next of kin and not to a life tenant of the residue.

See also *Dresel v. King,* 198 Mass., 546, 85 N. E., 77; 126 Am. St. Rep., 459.

In *Worcester Trust Co. v. Turner,* 210 Mass., 115; 96 N. E., 132, it was held that where a testator directed the residue of a certain fund to be divided among the first sixteen legatees named in the will, in certain stated amounts, the clause constituted a direct bequest to the sixteen individuals named in severalty, and that where the legacies of some of the sixteen named lapsed. by reason of their death before testator, their share in the residue lapsed also, and in the absence of anything in the will to the contrary, the interest of such legatees in the residue was distributable as intestate property.

In *Lyman v. Coolidge,* 176 Mass., 7; 56 N. E., 831; 382, it was held:

"Where a legacy lapses,. which is part of the residue, it cannot, according to our decisions, fall into the residue, because it is itself a part of the residue, and it must pass as intestate estate."

In *Lodge v. Grubb,* 15 Del. Ch., 105; 132 A., 142, it is held that if a legacy which lapsed was itself part of residue, it is treated as intestate property and goes to next of kin.

In *Aitken v. Sharp,* 93 N. J. Eq., 336; 115 A., 912, it is held that where a legacy is given by the residuary clause and lapses, it does not sink into the residue, but passes to the heirs or next of kin unless a contrary intention appears on the face of the will.

In *Prison Ass'n v. Russel,* 103 Va., 563; 49 S. E., 966 it is held that where a residuary clause in a will or some part of it fails to become effectual, it is denominated a residue of a residue and passes to the next of kin.

In *Crocker v. Crocker,* 230 Mass., 478; 120 N. E., 110; 112; 5 A. L. R., 1617 it is said:

"Where a legacy lapses which is a part of the residue it cannot fall again into the residue. It must pass as interstate property."

In *Dresel v. King,* 198 Mass., 546; 85 N. E., 77; 126 Am. St. Rep. 459, it is held that, in order that the residuary legatees be regarded as taking as tenants in common, rather than as a class, it is not necessary that their names be specifically mentioned, but it is sufficient if they are not in the ordinary sense members of any distinct class, and no relation to one another except as recipients of the testator's bounty. Under such circumstances, the residuary clause lapses in part by the death of one of the devisees, and the lapsed share descends to the heirs at law.

In *Best v. Berry,* 189 Mass., 510; 75 N. E., 743; 109 Am. St. Rep. 651, it is held that when an aggregate fund is bequeathed to several legatees to be divided among them, *nominatim, in* equal shares, if any of them die before the testator, the share of the decedent will lapse and descend to the heirs at law.

In *Horton v. Earle,* 162 Mass., 448; 38 N. E., 1135, it is held that where the residuary legacy is not to a class, but to persons in common, upon the death of one of them, the

share of the deceased lapses and does not inure to the benefit of the remaining legatees.

In *Sohier v. Inches,* 12 Gray (Mass), 385, it is held that where a residuary bequest is to several, but is a certain specific share to each, and there are no words indicating an intent to create a survivorship, on the death of one of the residuary legatees, the share of the decedent does not fall into the residue, since it is itself a part thereof, and it must therefore descend to the testator's heirs at law.

In *Gordan v. Jackson,* 58 N. J., Eq. 166; 43 A., 98, it is held that where the testator fixes the identity of those who are to take under a residuary devise or bequest, and thereby fixes the proportion which each is to take, these persons are not a class, unless there is some indication in the will that the testator wishes them so to be regarded; but if one or more persons are named and the gift is to those named, and also to an unlimited number, altogether they constitute a class.

In *Ward v. Dodd,* 41 N. J., Eq. 414, 5 A., 650, it is held that where part of the residue lapses by reason of the death of one of the residuary legatees, it descends to the heirs at law.

In *re Hoffman's Will,* 201 N. Y., 247; 94 N. E., 990, it is held that where each legatee is to have a definite fraction or share of the residuary estate, on the death of part of the legatees, their share will not augument the shares of the remaining legatees.

In *re King,* 200 N. Y., 189; 93 N. E., 484; 34 L. R. A., (N. S.) 945; 21 Ann. Cas. 412, it is held that a bequest to a certain number of persons whose names are not mentioned, but who are so described as to be fixed at the time of the devise, is a devise in common, and not to a class, and hence upon the death of one of them, the share of the decedent lapses and falls into the residuum, and does not inure to the benefit of the survivors. *Kerr v. Dougherty,* 79 N. Y., 327. *Booth v. Baptist Church,* 126 N. Y., 215; 28 N. E., 238. *Hard v. Ashley,* 117 N. Y., 606; 23 N. E., 177. *Beek-*

*man v. Bonsor,* 23 N. Y., 298; 80 Am. Dec. 269. In *re Barrett,* 63 Misc. Rep., 484; 116 N. Y. S., 756, affirmed in 132 App. Div. 134; 116 N. Y. S., 756. In *re Kings County Trust Co.,* 69 Misc. Rep. 141; 126 N. Y. S., 287. *Betts v. Betts,* 4 Abb. N. C. (N. Y.), 317. In *re Muir,* 46 Hun (N. Y.), 555.

In *Hastings v. Earp,* 62 N. C. (Phil. Eq.) 5. *Johnson v. Johnson,* 38 N. C. (3 Ired. Eq.), 426. *Mebane v. Womack,* 55 N. C. (2 Jones, Eq), 293, it is held that where a residuary clause to testator's children, specifically named, lapses in part by the death of one of them, the share of the deceased goes to the next of kin, and not to the other residuary legatees.

"The doctrine that the lapsed portion of the residuary clause will inure to the benefit of the testator's next of kin or heirs, rather than to the remaining residuary legatees, also applies where there is a bequest of the residue and the first diposition fails; but not where the residue is first given to one person and a portion thereof to another, and the latter disposition is invalid. Where, however, the residuum is given in distinct parcels, it will be inferred that the testator did not intend that any lapsed portion· should fall into the residuum." 44 L. R. A. (N. S.) 813 (note).

It seems very clear from the case of *Peay v. Barber,* 1 Hill, Eq. 95, that a lapsed legacy may pass under a general residuary clause; but it is also clear from that case that "the rule does not apply where the residuary bequest is of a particular fund or description of property, or other certain residuum" (quoting syllabus).

In *Garrett v. Garrett,* 1 Strob. Eq. 96, the Court said:

"Whatever may be the generality or the comprehensiveness of the terms used, if it be manifest from the context of the will, that the residuary, bequest was of a particular fund or description of property, or other certain residuum, nothing else will pass."

The next suggestion of a residuum occurs in the final provision above quoted, which for convenience will be reproduced here:

"If any balance shall remain in the hands of my executors after the payment of the aforesaid legacies, I give, devise and bequeath the same to my brothers W. T. Chesnut and James Chesnut and to my sister Ellen W. Chesnut, or to such of them as shall be living at the time of my death, in equal shares."

By the express terms of this provision the residuum was to consist of the balance of the first described residuum after the payment of the 25 interests, including the $30,000 to W. T. Chesnut. If this sum was necessarily a part of the subtrahend which was to be deducted from the minuend (the first residuum), it necessarily could not become a part of the remainder.

It appears incontrovertibly therefore that the interest of W. T. Chesnut in the first residuum, whether a beneficial interest in a trust fund, or a demonstrative legacy to be paid out of that residuum, has lapsed and passed into the general assets of the estate of the testatrix, undisposed of by her will and distributable among her heirs at law.

The value of this interest is to be determined by the actual financial status of the residuum after providing for the prior devises and legacies. The will contains the following provision which is set forth above but reproduced for convenience here:

"But if the net proceeds of the sale of the residue of my estate shall not be sufficient to pay all of the aforesaid legacies in full, it is my will (and I so direct) that the legacies to my brothers and sister shall not abate, but shall first be paid in full before any of the other legacies above provided for are paid."

It is manifest that the testatrix intended that the three interests, W. T. Chesnut, $30,000, James Chesnut, $30,000

and Ellen W. Chesnut, $25,000, should be paid in full in preference to the other interested parties.

The executors will therefore set aside $30,000 as the interest of W. T. Chesnut as intestate property distributable among the heirs at law of the testatrix, pay James Chesnut $30,000 and Ellen W. Chesnut $25,000, provided the residuum is sufficient for that purpose, otherwise pro rata to these three several interests; if there should remain anything of the residuum after providing for these three interests they will devote the remainder to the other several interests, in full or pro rata as the case may be; if there should remain any balance after providing for these interests, it will be devoted as directed in the circuit decree.

The judgment of this Court is that the judgment of the Circuit Court be modified as herein indicated and that the case be remanded to that Court for further proceedings consistent with the conclusions hereinabove announced.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER and CARTER concur.