THE MERCHANTS NATIONAL BANK OF NEW BEDFORD, trustee, *vs.* HOWARD L. CHURCH & others.

Bristol.   October 23, 1933. — February 13, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & LUMMUS, JJ.

*Devise and Legacy,* "Heirs," Remainder.

The will of an intelligent but uneducated man, which was drawn by a layman, contained gifts to various beneficiaries with accurate descriptions of them and their relation to the testator.  The residue was given to a trustee to pay the income to the testator's wife, son and daughter during their lives, and to the survivors or survivor upon the death of any of them; and at the death "of both my said children (in case they survive my wife)" to pay the remaining portion of the residue "to the heirs of my said children."  At the time the will was made the testator's son had three minor children who had been deserted by the son and who were being supported by the testator, and he had great affection for them and solicitude for their future.  The only instance of the use of the word "heirs" in the will was in the clause above quoted.  Other provisions of the will showed that the testator recognized a distinction between a gift specifically to his grandchildren and a gift to the heirs of his children.  *Held,* that the word "heirs" in the provision pertaining to the disposition of the remainder interest in the residue did not mean "children," but meant takers by inheritance.

The widow, son, daughter and three grandchildren of the testator above mentioned survived him.  The widow died first, then the daughter, married but without issue, and last the son leaving a widow and the three children.  The residue consisted of both real and personal property.  *Held,* that

(1) At the death of the daughter, one half of the remainder interest vested in her heirs, actual enjoyment thereof by them being postponed until the death of the son; and at his death the other half of the remainder interest vested in his heirs;

(2) The husband of the daughter was not entitled to $5,000 plus one half of the balance of the one half remainder interest which vested in her heirs at her death; following *Holmes* v. *Holmes,* 194 Mass. 552;

(3) The remainder interest should be distributed, one fourth to the husband of the daughter, one fourth to the son's personal representative, one sixth to the widow of the son, and one ninth each to his three children;

(4) Income which had accumulated up to the time of the son's death should be paid over to his personal representative.

PETITION for instructions, filed in the Probate Court for the county of Bristol on March 20, 1933, by the trustee under the will of Charles C. Church, late of New Bedford.

The petition, material facts, and a decree entered by order of *Hitch*, J., are described in the opinion. Certain respondents appealed.

*J. D. Kenney*, stated the case.

*W. S. Downey*, (*F. Vera* with him,) for Louise W. Church, individually and as executrix.

*C. Mitchell*, for Elwood E. Booth, submitted a brief.

*B. B. Barney*, (*J. F. Francis* with him,) for Howard L. Church and others.

PIERCE, J. This is a petition brought by The Merchants National Bank of New Bedford, trustee under the will of Charles C. Church, for instructions as to the proper construction of the phrase "heirs of my said children," which appears in the residuary clause of the will. The will was executed on April 23, 1903. At that time the immediate family of the testator consisted of his wife, Aroline, and two children, Cordelia W. and Charles B. Cordelia W. was unmarried. Charles B. was married and had three children, Ethel M., Norman B. and Howard L., then aged respectively eleven, eight and four years. Each of the parties above mentioned was specifically named as beneficiary under the will apart from the residuary clause. The residuary estate consisted of real and personal property, and was left in trust, the income thereof to be paid in equal shares to the testator's wife and to his son and daughter during their respective lives. The residuary clause of the will further reads as follows: "at the decease of either of my said wife or children, said income is to be divided equally among the survivors, or paid to the Survivor. If my said wife should die before either of my said children, I hereby authorize my Executor hereinafter named to pay over to either one of my said children such part of the principal of said Rest and Residue as he may deem best for their comfort or support; but in the event of any payment to either one of my said children, the other shall have paid to him or her an equal amount. At the decease

of both my said children (in case they survive my wife) all that part of my Estate remaining in the hands of my Executor shall be paid to the heirs of my said children."

The testator died July 8, 1909, survived by his wife, daughter, son, and the son's three children. The widow died December 11, 1909. Cordelia W. Church married Elwood E. Booth in 1908; she died without issue on February 5, 1921, leaving as her heirs at law her husband and her brother, Charles B. Church. Charles B. Church died on December 24, 1932, leaving a wife, Louise W. Church, and the above mentioned three children. These children claim the final remainder as "children" of a child of the testator, which remainder the testator in his will gave to the heirs of his children. The surviving husband of Cordelia W. Church, the said Elwood E. Booth, contends that he is entitled to share in the distribution of said trust fund as statutory heir of his deceased wife. The surviving widow of Charles B. Church, Louise W. Church, contends that she, individually, is entitled to share in the distribution of the principal of 'said trust as one of the "heirs of my said children," and that she, as executrix of the will of her husband, is entitled to share in said distribution on the ground that said Charles B. Church was one of the "heirs of my said children." The prayers for instruction are: "1. What persons are entitled to share in the distribution of the principal of said trust estate under said will and what share should be paid to each person entitled?" and "2. Does the above described accumulated income pass with the principal of said trust estate or is it payable to said Louise W. Church, executrix of the will of Charles B. Church?"

As a part of the circumstances attending the execution of the will, the judge of probate found that the testator "was an intelligent but not an educated man"; that he was a fisherman much of the time and a raiser of garden truck which he sold; that "he was shrewd and saving and acquired a competence" of over $60,000; that in conversation "his English was rudimentary and he talked like the average fisherman"; that in his lifetime the testator

supported his grandchildren and his son's family in whole or in part before they were deserted by Charles B. Church; that thereafter he continued furnishing support to them up to his death; that the son contributed nothing from the time he deserted his family until 1905, when his wife obtained a decree for support; that the testator had great love and affection for his grandchildren and solicitude for their future; that his will was made in 1903 not long after his son's desertion of his family, and while the testator was principally supporting his grandchildren; and that Charles B. Church (having knowledge of the will and its execution) at one time said to the testator a profane expression of his opinion as to the will, and the testator answered "someone has got to care for the children." The judge further found that "Pardon C. Thomson, who wrote the will for the testator, was a layman . . . and it did not appear that he was skilled in discriminating between words, which might have a technical meaning." The judge also found. "from all the circumstances attending the execution of the will and in the mind of the testator when the will was executed that the testator desired to provide for his said grandchildren and that whatever was finally left in his estate he intended his said grandchildren to have and construing the will in the light of said circumstances and his evident desires . . . [found] he intended his grandchildren to have the final remainder of his estate and that when he left it to the heirs of his children in his will he supposed that he was leaving it to his grandchildren and that to carry out the intent of the testator the word 'heirs' as used in the will should be construed as meaning 'children.'"

The judge ordered and decreed and instructed the petitioner (1) that "Ethel M. Aldrich, Norman B. Church and Howard L. Church only are entitled to share equally in the distribution of the principal of the personal property of said trust estate"; and (2) that "The accumulated income is payable to Louise W. Church as executrix of the will of Charles B. Church." The case is before this court on the appeals from the aforesaid order and decree of the Probate Court taken by Louise W. Church, individu-

ally, and as executrix of the will of Charles B. Church, and by Elwood E. Booth, surviving husband of Cordelia W. Booth.   .

The word "heirs" in its ordinary as well as technical signification denotes and it is to be construed as meaning those persons who take a person's real estate by inheritance after his death. *Sherburne* v. *Howland*, 239 Mass. 439.  The word "heirs" also includes by force of statute a surviving husband or wife. *Yerxa* v. *Youngman*, 241 Mass. 251.  G. L. (Ter. Ed.) c. 190, § 1.  It is apparent in the case at bar that the decree of the Probate Court was erroneous if the word "heirs" was used in the will in question in its usual and technical sense.  The fundamental issue for decision is, Does the word "heirs," as shown by the context of the will and the circumstances under which the will was executed, show that it was employed by the testator as signifying children and not takers by inheritance?  There is nothing in the context of the will to indicate that the testator or the scrivener used the word "heirs" as synonymous with the word "children"; indeed, the word "heirs" is used only once in the will, and that time in the sentence to be construed by which the testator directs final distribution of "the principal of said Rest and Residue" after having made bequests in favor of his wife, children and grandchildren.  The testator was precise in other parts of the will in his description of beneficiaries and their relation to him.  Exercising such care, it can hardly be supposed that the provision as to the disposition of the rest and residue of his estate was accidental and failed to express his real intention.  It is to be noted that in the paragraph preceding the residuary clause, the testator provided that "in the event of the death of all of my said grand-children before arriving to the age of 21 years," then the bank accounts bequeathed to them "shall be added to my estate and become a part of the Rest and Residue herein-after mentioned."  He thus recognized a difference between a gift of the bank accounts to his grandchildren and a gift of the residuary fund to the heirs of his children, for he directed that if the former gift should fail

it would pass with the latter gift. The gift over in the contingency mentioned would be senseless if "heirs of my said children" meant children "of my said children." The fact that the widow of Charles B. Church became his wife by a marriage subsequent to the death of the testator is immaterial in any consideration of the testator's intention. It is for the court not to speculate as to what the testator might have done if the exact situation which has arisen had in truth been in his mind when making his will, but to determine the meaning of the will actually made and apply that meaning to the facts presented. *Crocker* v. *Crocker*, 230 Mass. 478, 480. The clause in question created a contingent remainder in the heirs at law of the children of the testator, a half interest in which became vested in the heirs at law of each child immediately on the death of such child, though subject, in the case of the child dying first, to be postponed as to actual enjoyment until the termination of the life estate given to the surviving child. *Brown* v. *Tuckerman*, 255 Mass. 347. *Brown* v. *Tuckerman*, 260 Mass. 584. *Sherburne* v. *Howland*, 239 Mass. 439.

It follows that in answer to question one, what persons are entitled to share in the distribution of the principal of said trust estate under the residuary clause of said will of Charles C. Church, and what share shall be paid to each person so entitled, the petitioner is instructed that the principal should be distributed as follows: one fourth to Elwood E. Booth, statutory heir of Cordelia W. Booth; one fourth to the executrix of the will of Charles B. Church, next of kin by blood; one sixth to Louise W. Church, statutory heir of Charles B. Church; one ninth to Ethel M. Aldrich, one ninth to Norman B. Church and one ninth to Howard L. Church, children and next of kin of Charles B. Church. G. L. (Ter. Ed.) c. 190, § 1.

The contention of Elwood E. Booth, that he is entitled as husband of Cordelia W. Booth to $5,000 plus one half of the balance of the moiety which vested on her death, is not supported by *Old Colony Trust Co.* v. *Sullivan*, 268 Mass. 318. His rights are measured and determined by *Holmes* v. *Holmes*, 194 Mass. 552. It is to be noted that under the will

the "heirs of my said children" took no interest in the residuary estate through the children, but took directly under the will from the testator, because, at the death of the children, they were the persons or of the class described by the testator as the objects of his bounty.

The petitioner was rightly instructed by the Probate Court that the accumulated income referred to in the petition is payable to Louise W. Church, as executrix of the will of Charles B. Church. G. L. (Ter. Ed.) c. 197, § 27. *Ward* v. *Blake*, 247 Mass. 430.

> *Decree reversed.*
> *Decree to be entered consistent*
> *with this opinion.*