THE NEW ENGLAND TRUST COMPANY, trustee; *vs.* WILLIAM WOOD, administrator, & others.

Plymouth. May 2, 1950. — July 6, 1950.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Devise and Legacy,* "Heirs," Power, Life estate, Class, Remainder. *Power. Conflict of Laws. Evidence,* Foreign law, Judicial notice. *Rule against Perpetuities. Executor and Administrator,* Nonresident decedent. *Words,* "Heirs," "Usufruct."

The law of Massachusetts, where a testator was domiciled although he had lived for many years and died in Turkey, governed the validity of the exercise of a power of appointment given by his will to his wife over property held in Massachusetts in a trust created by the will.

Under provisions of a will drawn and executed in Turkey, where the testator had lived for many years and died although domiciled in Massachusetts, establishing a trust and directing the trustee to pay the income to the testator's wife during her life "and after her death . . . [to] hold the . . . trust . . . [property] and the income thereof for such heir or heirs as . . . [she] shall by deed will or codicil appoint," with a subsequent reference to "her heirs," the words "heir or heirs" did not mean the testator's heirs, nor his wife's heirs in the technical sense, but were used in the general sense of "beneficiary or beneficiaries"; and such provisions gave the wife, with her life interest, a general power of appointment over the trust property by deed or will.

This court was not required by G. L. (Ter. Ed.) c. 233, § 70, to take judicial notice of Turkish law not brought to the attention of the trial court or of this court, and did not do so where it was not practicable.

In a will executed in Greece by a citizen and resident of that country and construed by this court according to the Greek law, provisions in which the testatrix stated: "I name as my heirs . . . [two brothers and three nephews]. And I ordain that . . . [certain property] shall devolve in equal shares upon these my five heirs, under the proviso that my brothers . . . shall have only the usufruct of their respective shares during their lifetime," meant that each of the brothers should take the income of one fifth of the property for his life and that upon his death his share should be added to the shares of the nephews.

A provision of the will of a citizen and resident of Greece having a life interest in the property of a trust and a general power of appointment thereof, whereby she disposed of "all property belonging to me and

lying . . . in America (at . . . [a designated trust company])," at which she had no property except that derived from the creator of the trust, was a proper exercise of the power.

Under provisions of a will establishing a trust and directing the trustee to pay the income to the testator's widow during her life "and after her death . . . [to] hold the . . . trust . . . [property] and the income thereof for such" persons as she might appoint by deed or will, the trust terminated upon the death of the widow and there was no violation of the rule against perpetuities where she by will appointed the trust property equally to two brothers and three nephews of hers with the proviso that each of the brothers should take only a life interest in the income of his one-fifth share and that upon his death his share should be added to the shares of the nephews.

In the absence of any debts of the estate of a decedent domiciled in Greece, property of the estate in the hands of a personal representative appointed by a Probate Court in this Commonwealth should, under G. L. (Ter. Ed.) c. 199, § 1, be distributed by him according to the decedent's will.

PETITION, filed in the Probate Court for the county of Plymouth on April 28, 1949, by the trustee under the will of Ezra Johnson Davee, late of Plymouth, seeking instructions: "(a) Whether said trusts have terminated and if not to what persons and in what proportions the income should now be distributed and for how long the trusts should continue; (b) If said trusts have terminated to what persons and in what proportions the trust property in the hands of your petitioner as trustee . . . and any accumulated income now in its hands, should now be transferred and distributed; (c) And for such further relief as to this court may seem proper and equitable."

The case was heard by *Davis*, J.

In this court the case was submitted on briefs.

*J. Garfield & W. A. Dupee, Jr.,* for James Ralph Gout and others.

*A. S. Feinberg, R. M. Briggs, & I. H. Beckwith,* for William Wood, administrator, and others.

*D. F. McCormack,* for Ismay Gertrude Hulse, administratrix.

WILKINS, J. This is a petition for instructions by the trustee under the will of Ezra Johnson Davee, late of Plymouth. The probate judge after hearing reserved and

reported the evidence and all questions of law to this court. G. L. (Ter. Ed.) c. 215, § 13.

Davee was born in Plymouth about 1823. At the age of twenty he went to Smyrna, Turkey, where he engaged in business and remained the greater part of his life. For approximately twenty years he was the American vice-consul at Smyrna. In 1912 he died there a citizen of the United States, leaving no issue and a widow, born Amelia Gout, whom he had married in 1864. His will, dated January 21, 1911, was allowed by the United States Consular Court in Smyrna on March 7, 1912, and by the Probate Court for Plymouth County on July 14, 1913.

The will leaves the residue to trustees, who "shall pay the income thereof to my wife Amelia Cleopatra Davee during her life and after her death shall hold the said trust premises and the income thereof for such heir or heirs as my said wife shall by deed will or codicil appoint provided always and I hereby declare that my trustees may postpone the sale conversion and the collection of any part or parts of my personal estate so long as they shall deem proper provided always that my trustees may after the death of my said wife raise any part or parts not exceeding one half part of the vested share or fortune of any of her heirs and apply the same for his or her advancement and benefit." The petitioner is the present trustee under this provision.

Amelia Davee, the widow, subsequently married Andrew Koumoundouros, left Turkey, settled in Athens, Greece, and acquired Greek citizenship. Prior to 1936 Andrew Koumoundouros died. In that year Amelia duly executed a will before a notary public and three witnesses in accordance with the Greek law governing the making of a notarial will. This will reads in part: "I name as my heirs my brothers Frederic and Edgar Gout and the children of my deceased brother Ralph Gout, namely, James Ralph Gout, Edward Gout and Reginald Gout. And I ordain that all property belonging to me and lying today in Greece

and in America (at the New England Trust Company, of Boston) shall devolve in equal shares upon these my five heirs, under the proviso that my brothers Frederic and Edgar shall have only the usufruct of their respective shares during their lifetime."

Amelia died on May 2, 1941, unmarried and without issue, a resident of Athens and a citizen of Greece. Her will was allowed by the Athens Court of First Instance on January 30, 1945, and by the Probate Court for Plymouth County on November 12, 1946. She had no property at The New England Trust Company except that which came to her from Davee. Her brother Frederic predeceased her. Her brother Edgar survived her, but died before the filing of this petition. The three nephews are living. The Merchants National Bank of Boston is administrator with the will annexed of Amelia's estate by appointment of the Probate Court for Plymouth County.

Questions under Davee's will, including the validity of the exercise of the power by the donee, are to be determined by the law of Massachusetts, where he was domiciled. *Sewall* v. *Wilmer*, 132 Mass. 131, 136–137. *Hogarth-Swann* v. *Weed*, 274 Mass. 125, 130. *Pitman* v. *Pitman*, 314 Mass. 465, 470–471. Under that law, if the words "heir or heirs" in the power of appointment were used in their usual sense as indicating "those persons who would take the testator's property had he died intestate" (*Calder* v. *Bryant*, 282 Mass. 231, 237; *State Street Trust Co.* v. *Sampson*, 228 Mass. 411, 412–413), a vista of difficult questions would unfold. That such was not the intent is clear from the language of the will, in which one of the provisos refers to "her heirs." It is also apparent that Amelia's heirs in the technical sense were not intended, because she is given power to appoint to them by deed, which would be impossible as an inter vivos transaction. The testator spent much of his life in Turkey, and his will was apparently drawn and executed there. In places its phraseology is strange and unusual. Considering the will as a whole and giving full effect to all the words in the portion now material, including the word "deed,"

we are of opinion that the words "heir or heirs" are used in the general sense of "beneficiary or beneficiaries." This is an application of the principle that "if the word 'heirs' is used clearly in some sense different from its correct meaning, or as indicating some restriction upon that class, that meaning will be given effect." *Gilman* v. *Congregational Home Missionary Society*, 276 Mass. 580, 583. See *Smith* v. *Haynes*, 202 Mass. 531, 534; *Merchants National Bank* v. *Church*, 285 Mass. 217, 221–222; *First National Bank* v. *Rothwell*, 305 Mass. 116, 122. See also *Shapleigh* v. *Shapleigh*, 69 N. H. 577, 579. Thus construed, the will creates a life estate in Amelia with a general power of appointment by deed or will. *Thompson* v. *Pew*, 214 Mass. 520, 522.

Some respondents assert that at all material times the laws of inheritance in both Turkey and Greece were based upon Roman civil law. While, as to the law of Greece, this was fully brought to the notice of the court below and to our notice, this was not done as to the law of Turkey. Although not so required, we might take notice of Turkish law. G. L. (Ter. Ed.) c. 233, § 70. *Vergnani* v. *Guidetti*, 308 Mass. 450, 455. *Hiller* v. *American Telephone & Telegraph Co.* 324 Mass. 24, 27–28. But here this is not practicable. We must reach our conclusion without reliance upon any supposed resemblance of the Turkish law of inheritance to the Roman law. See Sherman, Roman Law in the Modern World, § 188 et seq.

The validity of the execution of Amelia's will is governed by the law of Greece, where she died domiciled. *Lee* v. *Monks*, 318 Mass. 513, 516. Her will was written in Greek by the notary public to whom she orally stated "her last wishes." It has been allowed, and its validity is agreed upon. We also must look to the Greek law for the meaning of certain words. In Roman law the appointment of a heres or heredes, a successor or successors, accorded to such person or persons a dual position somewhat analogous to that occupied under our law by an executor or executors who are sole legatees or devisees. See Buckland, Elementary Principles of the Roman Private Law, 136; Buckland, Text-

Book of Roman Law from Augustus to Justinian, 281; Roby, Roman Private Law, Vol. I, 171; Sherman, Roman Law in the Modern World, § 662 et seq. This sheds light upon the statement in Amelia's will, "I name as my heirs." Based upon the opinion of an expert in Greek law which was brought to the notice of the judge at the hearing and to our notice, we reach these conclusions. Usufruct means "a right attached to the person which may not be inherited." The clause "all property belonging to me . . . shall devolve in equal shares upon these my five heirs, under the proviso that my brothers Frederic and Edgar shall have only the usufruct of their respective shares during their lifetime" means that Frederic Gout and Edgar Gout each obtained the income for life of one fifth of the property, and upon the death of each his share was to be added to the shares of the three nephews. See Buckland, Text-Book of Roman Law from Augustus to Justinian, 268; Roby, Roman Private Law, Vol. I, 484; Sherman, Roman Law in the Modern World, § 583 et seq.

As previously noted, the validity of the exercise of the power of appointment is determined by the law of this Commonwealth. The words, "all property belonging to me and lying today in Greece and in America (at the New England Trust Company, of Boston)," are a proper exercise of the power. *Amory* v. *Meredith*, 7 Allen, 397. *Boston Safe Deposit & Trust Co.* v. *Painter*, 322 Mass. 362, 366. There is no violation of the rule against perpetuities. Amelia had a general power to appoint by deed or will, and she exercised the power. *Bundy* v. *United States Trust Co.* 257 Mass. 72, 79. See *Minot* v. *Paine*, 230 Mass. 514, 521. The provision of the will that after Amelia's death the trustees "shall hold the said trust premises and the income" for such persons as she shall appoint does not violate the rule. We think that this provision is not ambiguous. But even where there is an equivocal provision which it is possible to interpret either as a violation or not as a violation, the interpretation which is not repugnant to the rule must be adopted. *Loring* v. *Blake*, 98 Mass. 253, 260. *Gray* v.

*Whittemore,* 192 Mass. 367, 378–379. Restatement: Property, § 243, comment n; § 375. Gray, Rule against Perpetuities (4th ed.) § 633.

We do not reach the question of the application of the doctrine of capture. *Fiduciary Trust Co.* v. *Mishou,* 321 Mass. 615, 624. *Amerige* v. *Attorney General,* 324 Mass. 648, 656–657.

The administrator with the will annexed of Amelia's estate has in its possession $225.41 paid to it by the trustee under Davee's will as income accruing prior to her death. The administrator in its answer asks instructions as to the persons to whom and the proportions in which it should make distribution. It does not appear that there are any debts of the estate. In accordance with what has been said above, this property of Amelia's estate, which is to be distributed according to the law of Greece (where there is neither executor nor administrator), after paying one fifth of any income thereon to Edgar's estate, is to be divided equally among the three nephews. G. L. (Ter. Ed.) c. 199, § 1.

A decree is to be entered instructing that the trust under the will of Ezra Johnson Davee has terminated; and that the entire property should now be distributed as follows: one fifth of the income which has accrued from the death of Amelia Koumoundouros until the death of Edgar Gout to the administratrix of the estate of Edgar Gout; and one third of the remaining income and one third of the entire principal to each of the three nephews James Ralph Gout, Edward Gout, and Reginald Gout. The decree shall instruct also that the amount in the possession of the administrator with the will annexed of the estate of Amelia Koumoundouros which was received from the trustee under the will of Ezra Johnson Davee as income accruing prior to her death, after paying one fifth of any income thereon to the administratrix of the estate of Edgar Gout, shall be distributed equally among James Ralph Gout, Edward Gout, and Reginald Gout.

*So ordered.*