Second Bank-State Street Trust Co. *v.* Second Bank-State Street Trust Co.

Second Bank–State Street Trust Company & another, executors, *vs.* Second Bank–State Street Trust Company, trustee, & others.

Suffolk. December 4, 1956. — February 6, 1957.

Present: Wilkins, C.J., Ronan, Williams, Counihan, & Cutter, JJ.

*Rule against Perpetuities. Trust,* Construction, To individuals or class, Remainder, Time of vesting. *Equity Jurisdiction,* Declaratory relief. *Declaratory Judgment.*

The executors of the will of the settlor of an inter vivos trust were entitled to maintain a suit in equity against the trustee and beneficiaries of the trust for immediate determination, necessary for the proper discharge of the executors' duties in connection with probate and tax matters, of the question whether certain remainder interests in the trust corpus were void under the rule against perpetuities and belonged to the settlor's estate by way of resulting trust. [409]

The period of the rule against perpetuities with respect to an irrevocable inter vivos trust runs from the effective date of the trust instrument and not from the death of the settlor or testator as in the case of a revocable trust or a will. [409–410]

The terms of a certain irrevocable inter vivos trust providing for life interests in the settlor, his widow, and his children and for termination of the trust twenty-one years "after the death of the last survivor of the children" and distribution at that time "among . . . [their] issue, per stirpes" showed that a separate share of the trust corpus was established for the benefit of each child and his issue devolving separately from the other shares, although administered with them, and that the remainder interests in the share of each child vested not later than his death in his issue surviving him, rather than that the remainder interests in the trust corpus were given to a general class consisting of the settlor's issue, per stirpes, living at the time of termination of the trust; and, even if "the children" of the settlor referred to in the provision for termination included children born after the effective date of the trust instrument, the remainder interests in the share of each child living at that date would vest within the period of the rule against perpetuities, and where all the children ever born to the settlor were living at that date all remainder interests in the trust corpus were valid under the rule and none belonged to the estate of the settlor at his death by way of resulting trust. [411–412]

Bill in equity, filed in the Supreme Judicial Court for the county of Suffolk on April 17, 1956.

The case was reserved and reported by *Spalding,* J.

*William Minot*, for the plaintiffs.

*Richard Wait*, for the defendants.

*Henry Parkman, Jr.*, for the guardian ad litem.

CUTTER, J.   This is a bill for declaratory relief and for an accounting brought by the executors of the will of Allan Forbes (hereinafter called the settlor), late of Westwood, against the sole remaining trustee and certain beneficiaries under a declaration of trust, known as the Lonach trust, executed by the settlor May 8, 1930.   A guardian ad litem was appointed to represent beneficiaries unascertained and undeterminable.   The various defendants filed answers admitting the allegations of fact in the bill.   A single justice of this court, without decision, reported and reserved the case on the pleadings, "such decree to be entered as justice and equity require."

On May 8, 1930, the settlor transferred certain securities to himself [1] and a bank in trust to pay the income to the settlor for life and thereafter to the settlor's wife, Josephine, for life.   Paragraph Third of the instrument provides in part: "After the decease of both the" settlor and "Josephine, the said trust estate shall be held in trust for the benefit of the children of the said Allan, and the issue of any child who may have deceased, each child to receive an equal share of the net income therefrom during his or her life. The share of any child who shall die leaving no issue surviving him or her shall be held in trust for the equal benefit of the surviving children of the said Allan, and the issue of any deceased child, taking by the stocks; and the net income therefrom shall be paid over equally to such surviving children during their lives, and to the issue of any deceased child, such issue taking their parents' share.   If any child of the said Allan shall die leaving issue, his or her share shall be held in trust for the benefit of such issue, and the net income therefrom paid over to such issue, per stirpes, or to their legal guardian or guardians, until the termination of this trust.   At the expiration of twenty-one years after the death

---

[1] The Lonach trust provides that after the settlor's death the bank is to be sole trustee.

335 Mass. 407 409

Second Bank-State Street Trust Co. *v.* Second Bank-State Street Trust Co.

of the last survivor of the children of the said Allan, this trust shall terminate, and the trust estate shall then be distributed among such issue, per stirpes, and not per capita; and until the termination of this trust, the trust estate shall be held together, and administered as one trust."

No power of revocation or amendment is contained in the Lonach trust, which includes a spendthrift clause and trust powers.[2]

The settlor has died. His widow, Josephine Forbes, and four children of the settlor are now living. One son, Robert, died before the settlor leaving two children, Elizabeth and Phyllis Forbes, both born after May 8, 1930, and now minors. After May 8, 1930, the settlor had no further children. The youngest child of the settlor was born in 1925.

This is an appropriate case for declaratory relief. The executors are immediately faced with important probate problems and possibly also Federal tax questions,[3] which the executors contend make it essential that they know now, by a decree which effectively terminates existing controversies, whether any future interests in the Lonach trust corpus belong to the estate of the settlor. *Madden* v. *State Tax Commission*, 333 Mass. 734, 735–737. See G. L. (Ter. Ed.) c. 231A, §§ 1, 2, 3, inserted by St. 1945, c. 582, § 1.

The question for determination is whether the remainder interests (other than the admittedly valid life estates of the settlor's widow, Josephine, and his children) are void as in violation of the rule against perpetuities so that a resulting trust in favor of the settlor's estate may exist. This question arises, of course, because the Lonach trust is an irrev-

---

[2] We expressly leave undecided all questions (which do not affect the validity of any interest, see Restatement: Property, § 444) relating to whether the restraints on alienation contained in the spendthrift clause will be binding and whether all the trust powers may be exercised during the whole period of this trust, which viewed as of 1930 might not have terminated until twenty-one years after the death of a child of the settlor not then born.

[3] See Internal Revenue Code of 1954, §§ 2036, 2037, 68A U. S. Sts. at Large, 382–383; C. C. H. Federal Estate and Gift Tax Reporter, pars. 1460.763, 1470–1470.95; Proposed Estate Tax Regulations, §§ 20.2036.1–20.2037–1, 21 Fed. Reg. 7872–7875. We have not attempted to consider any phase of these tax questions in detail. See *Commissioner of Internal Revenue* v. *Marshall's Estate*, 203 Fed. (2d) 534, 537–538 (C. A. 3). Compare *Costin* v. *Cripe*, 235 Fed. (2d) 162.

ocable, inter vivos instrument as to which the period of the rule against perpetuities starts running from the effective date of the instrument (*Sears* v. *Coolidge,* 329 Mass. 340; Restatement: Property, § 374, comment b) and not a will or a revocable trust, as to either of which the period of the rule against perpetuities would start running at the death of the testator or settlor. Restatement: Property, § 373, comment c. See Am. Law of Property, §§ 24.12, 24.59; Gray, Rule against Perpetuities (4th ed.) § 524.1. [4]

Possible invalidity of the remainder interests under this irrevocable inter vivos trust would not be prevented by the provision in paragraph Third for ultimate termination of the trust and distribution of the corpus at "the expiration of twenty-one years after the death of the last survivor of the children of the said Allan." We assume that an appropriate provision (see Simes and Smith, Future Interests [2d ed.] § 1295; Am. Law of Property, Sup. § 24.7) for (a) termination of all the trusts under paragraph Third at the end of a period of twenty-one years after the death of specified or ascertainable persons living at the effective date of the trust in 1930 and (b) for distribution of the corpus at the date of such termination to persons then ascertainable, would have assured the validity of all the gifts in paragraph Third, even if those gifts might otherwise have been in violation of the rule against perpetuities. However, if the term "the children of the said Allan" refers to all the children [5] of the settlor, whether born before or after the effective date of the trust instrument, then the provision for ultimate termination of the trusts and distribution of the corpus, actually found in paragraph Third (because of the possibility existing in 1930 that further children of the

---

[4] See also Newhall, Future Interests and the Rule against Perpetuities in Massachusetts (1951 ed.) § 35; Leach, Perpetuities in a Nutshell, 51 Harv. L. Rev. 638, 642.

[5] In view of the obvious purpose of the draftsman to ensure that final termination should take place within the period of the rule against perpetuities, it might be argued (see Am. Law of Property, §§ 24.43–24.46,. especially at pages 114–116) that the words "the children of the said Allan" should be interpreted as referring only to those children living at the effective date of the trust. The validity and seasonable vesting of the remainder interests, as we interpret paragraph Third, are not dependent on any such construction and we do not now decide whether it would be a proper construction.

335 Mass. 407                                   411

Second Bank-State Street Trust Co. *v.* Second Bank-State Street Trust Co.

settlor might be born thereafter) does not necessarily limit termination to the expiration of twenty-one years after lives in being in 1930. Viewed as of 1930, this termination could conceivably take place more than twenty-one years after the death of the last survivor of the settlor's children living in 1930. For example, a son of the settlor might have been born in 1932. If that child turned out to be the last survivor of the widow and all the children of the settlor, the vesting of an interest under paragraph Third twenty-one years after his death would be at too remote a time.

The executors in effect rest their contentions upon the possibility, just mentioned, that the termination date (viewed as of the effective date of the trust in 1930) might occur at too remote a date. They seem to construe the fourth sentence of paragraph Third as giving the corpus of the trust at the termination date to a general class consisting of the settlor's issue, then living, per stirpes. This gift, they say, is void "because it was possible that the class . . . could both increase and decrease in number for a period beyond that allowed by the" rule against perpetuities. We think, however, that paragraph Third is not to be viewed as making a general class gift, but that it contains limitations governed by the doctrine of severable or severed shares. *Merriam* v. *Simonds,* 121 Mass. 198. *Hills* v. *Simonds,* 125 Mass. 536, 539–541. *Dorr* v. *Lovering,* 147 Mass. 530, 532–536. *Minot* v. *Doggett,* 190 Mass. 435, 436–437. *Leverett* v. *Rivers,* 208 Mass. 241, 242. Restatement: Property, § 389.[6] See *Commissioner of Corporations & Taxation* v. *Bullard,* 313 Mass. 72, 80–81.

---

[6] See also *Smith's Estate* v. *Commissioner of Internal Revenue,* 140 Fed. (2d) 759, 762–763 (C. C. A. 3); *Harrah Estate,* 364 Pa. 451, 458–463, reviewing the Massachusetts cases and certain other American authorities on severable shares; *Cattlin* v. *Brown,* 11 Hare, 372, 379 et. seq.; *Wilkinson* v. *Duncan,* 30 Beav. 111; *Knapping* v. *Tomlinson,* 34 L. J. Ch. (N. S.) 3; *Re Mosley's Trusts,* L. R. 11 Eq. 499, 505 (but see *Pearks* v. *Moseley,* L. R. 5 A. C. 714, 720); *Re Russell,* [1895] 2 Ch. 698, 703; *Re Nash,* [1909] 2 Ch. 450, 459; Gray, Rule against Perpetuities (4th ed.) §§ 389–395; Am. Law of Property, § 24.29; Simes and Smith, Future Interests (2d ed.) § 1267; Morris and Leach, Rule against Perpetuities, 102; Leach, Perpetuities in a Nutshell, 51 Harv. L. Rev. 638, 649–651, and Perpetuities and Class Gifts, 51 Harv. L. Rev. 1329, 1347; Tudor, Absolute Certainty of Vesting under the Rule against Perpetuities — A Self-Discredited Relic, 34 B. U. L. Rev. 129, 136–137.

We view paragraph Third as setting up a separate share of the trust corpus for each child of the settlor and such child's issue, with the devolution of that share to be dealt with separately from the devolution of the other shares. On our construction of paragraph Third, no remainder interest in any share of the trust corpus will vest later than the death of a child of the settlor. As all the children of the settlor were living at the effective date of the trust in 1930, all remainder interests will vest within the period of the rule against perpetuities. They thus will be unaffected by the possibility (which existed in 1930 but which never eventuated) that the settlor might have children born later in whose separate and severable shares the remainder interests might vest more than twenty-one years after the end of lives in being in 1930.

We are guided to this construction of paragraph Third by the principle that if there are two or more reasonable interpretations of a dispositive scheme, one of which does not result in holding the remainder interests void under the rule against perpetuities when others do so, the interpretation leading to a holding of validity should be adopted, if consistent with the settlor's general intention and with the public policy[7] behind the rule itself. *New England Trust Co. v. Wood*, 326 Mass. 239, 244–245. Restatement: Property, § 243, comment n; § 375. However, apart from this general principle, paragraph Third shows that the settlor and his draftsman intended to set up a separate share of the trust property for each child of the settlor and that child's issue. This is apparent (a) from the frequent use of the word "share" in the early sentences of the paragraph (see *Shattuck* v. *Wall*, 174 Mass. 167, 169–170; *Boyd* v. *Bartlett*, 325 Mass. 206, 209–210); (b) from the provision that until "the termination . . . the trust estate shall be held together, and administered as one trust," which would have been un-

---

[7] This public policy plainly has become considerably less rigid in recent years. See G. L. (Ter. Ed.) c. 184A, inserted by St. 1954, c. 641, § 1, the enactment of which doubtless arose out of the discussions mentioned in note 11, *infra.*

335 Mass. 407                                                    413

Second Bank-State Street Trust Co. *v.* Second Bank-State Street Trust Co.

necessary[8] if the settlor had intended the remainder interests to be a single general class gift (instead of gifts of severable shares); and (c) from the direction that, at termination, the trust estate shall "be distributed among such issue, per stirpes," which continues the concept of a separate share for the line or stock of each child of the settlor (see *Minot* v. *Doggett*, 190 Mass. 435, 437; Restatement: Property, § 389, comments c and g). In addition to the foregoing, it should be pointed out that a provision of paragraph Third, not quoted earlier in this opinion, authorizes the trustees to pay over to any child "a sufficient amount, not exceeding, however, the share of such child or children in the trust fund," to enable such child to purchase certain real estate. This is additional proof that the settlor treated the shares as severable, for obviously the settlor, who has treated his children throughout paragraph Third with equality, intended each such advance to be charged against some share.

The words "such issue" in the termination provision just quoted refer back (compare *Dary* v. *Grau*, 190 Mass. 482, 486–487) to the "issue" mentioned in the earlier sentences describing the disposition of the severable shares. These sentences show a well conceived scheme of devolution of each separate share after the initial life estates in the settlor and his widow as described in the following paragraphs.

(1) The maximum number of the settlor's children and, consequently, the maximum number of separate shares, of course, would inevitably be settled at the settlor's death. Each of the settlor's children, living in 1930, took at once on the execution of the trust an equitable vested remainder life interest in a share. The fact that such child's gift was to be enjoyed "after the decease of" the settlor and his widow

---

[8] A single trust for a class would normally have been administered as a unit. Of course, separate and independent shares of a single trust, held together for investment and economical administration purposes, frequently must be regarded as severable for purposes of devolution and accounting. See discussion in *Parkhurst* v. *Ginn*, 228 Mass. 159, 167–169, 172; *Lannin* v. *Buckley*, 256 Mass. 78, 81; *Springfield Safe Deposit & Trust Co.* v. *First Unitarian Society*, 293 Mass. 480, 488; *New England Trust Co.* v. *Triggs*, 334 Mass. 324, 334; Restatement: Trusts, § 179, comments d (1948 Sup.), e; Scott, Trusts (2d ed.) § 179.2.

refers only to the time when the gift is to take effect in possession and not to the time of vesting. *Lyons* v. *Lyons*, 313 Mass. 550, 551–552. *Old Colony Trust Co.* v. *Clemons*, 332 Mass. 535, 539–540. This remainder life interest, of course, would never be possessed and enjoyed by that child, if he should die before the survivor of the settlor and his wife (see Am. Law of Property, § 21.5, note 9) and would have been reduced in size during the settlor's life, if another child or further children had been born after 1930.

(2) By the second sentence of paragraph Third the "share of any child who shall die leaving no issue surviving him or her" is to be held "in trust for the equal benefit of the surviving children" of the settlor "and the issue of any deceased child, taking by the stocks." Plainly this provision expressly directs that children of the settlor "deceased" before the gift over shall not participate in it. See *Dary* v. *Grau*, 190 Mass. 482, 486; *Monks* v. *Bradford*, 248 Mass. 296, 297–298. We think, however, that issue of then deceased children of the settlor, who survive the child of the settlor who was their ancestor, need not survive to the date of the gift over in order to take a part of it. The intent of the settlor on this point is shown (a) by the absence of an express requirement that such issue survive to the date of the gift over in contrast to the express requirement that the settlor's children shall survive to that date (see *Porter* v. *Porter*, 226 Mass. 204, 207; Am. Law of Property, § 21.16; see also *Nelligan* v. *Long*, 320 Mass. 439, 443; *Parkhurst* v. *Johnsberg*, 324 Mass. 66, 69–70), and (b) by the fact that in the third sentence of paragraph Third, in the case of a child of the settlor dying leaving issue, the issue who take (per stirpes) are those living at the death of that child. It is not unreasonable to infer that the settlor meant by "issue" in both sentences those issue, per stirpes, who survived that child of his who was their ancestor. This construction gains support also from the fact that it tends to result in a complete disposition of the trust property, whereas requiring issue living at the death of a previously deceased child of the settlor to be alive also at the time of a gift over

under the second sentence (in order to share in that gift) might result in an incomplete disposition,[9] in the event that a child of the settlor who never had issue should be the last survivor of the settlor's issue.

The indications of the settlor's expressed intent in this respect, which, of course, is controlling (see *Boston Safe Deposit & Trust Co.* v. *Park*, 307 Mass. 255, 263), are sufficient to overcome the effect of any general principles of construction which point in the direction of requiring survival to the date of the gift over. Compare *Boston Safe Deposit & Trust Co.* v. *Park, supra,* at pages 262–263, 268–269; *Robertson* v. *Robertson*, 313 Mass. 520, 528; Restatement: Property, §§ 249, comment i, 292, comment e, and 296, comment g. If survival was to be required, it would have been easy to make the gift over to issue *then living.* See *B. M. C. Durfee Trust Co.* v. *Borden*, 329 Mass. 461, 463.

(3) If a child of the settlor "shall die leaving issue, his or her share shall be held in trust for . . . such issue" with the income to be paid "to such issue, per stirpes . . . until the termination of this trust." Although, as already indicated, such issue must survive the child who is their ancestor in order to participate in the share, there is no express requirement that "such issue" be living at the death of the survivor of the settlor and his wife. Such a requirement will not normally be implied. See *Old Colony Trust Co.* v. *Brown*, 287 Mass. 177, 179–180; *Barker* v. *Monks*, 315 Mass. 620, 626–628; Am. Law of Property, §§ 21.9, 21.11, 21.13. Compare *Doggett* v. *New England Trust Co.* 327 Mass. 167, 169–170.

(4) At termination, the trust estate is to be distributed among "such issue, per stirpes." This provision does not say "issue then living," the natural way of expressing a requirement that the distributee, in order to take, must survive to

---

[9] Presumably, since this trust was irrevocable, it was set up with the intention that the settlor was at once disposing of all interest in the property following his own life estate. *National Shawmut Bank* v. *Joy*, 315 Mass. 457, 466. Restatement: Property, § 243, comment e. Compare the preference to be given to a construction of a will which will not result in intestacy as in *Balcom* v. *Balcom*, 333 Mass. 599, 600–601. See Am. Law of Property, § 21.3 b.

the date of termination. Compare *Springfield Safe Deposit & Trust Co.* v. *Ireland,* 268 Mass. 62, 66. On the contrary, the language and context show that "such issue," in the sentence providing for distribution on termination, can only refer back to "issue" already ascertained under the several earlier provisions of paragraph Third.

(5) The interests in each share of the trust property taken by issue of a deceased child of the settlor, under each sentence of paragraph Third, are without any expressed limit in time, in deliberate contrast to the specific provision, whenever a gift is made to a child of the settlor, that the child takes only a life or income interest. To be sure, income only is given to the issue of a deceased child until the date of termination of the trust, when distribution of the corpus is to be made "among such issue, per stirpes," but this provision for the payment of income prior to termination is not a limit upon the duration of the interest. At most, it is merely an interim provision made necessary by the postponement of possession and enjoyment of the corpus until the termination date (see *Boyd* v. *Bartlett,* 325 Mass. 206, 209), which even if it (or any related trustee's powers or restraints on alienation) should be held invalid would not affect the validity of the gift of income and corpus. See *Proprietors of the Church in Brattle Square* v. *Grant,* 3 Gray, 142, 156; note, 54 Harv. L. Rev. 839, 844; note 2, *supra.* See also *Lovering* v. *Worthington,* 106 Mass. 86, 88; *Amerige* v. *Attorney General,* 324 Mass. 648, 656. Because the gift of each share of income to issue thus ascertained (a) is a gift without limit of time, (b) is subject to no divesting provision, and (c) is followed at the termination date by distribution of the principal of the share to the same persons, we think that the gift in each instance is one of an equitable fee, vesting not later than the death of the child of the settlor who originally had a remainder life interest in the share in question. See *Chase* v. *Chase,* 132 Mass. 473, 474–475; *Anderson* v. *Harris,* 320 Mass. 101, 104–105; *Goodwin* v. *New England Trust Co.* 321 Mass. 502, 505–506.

What has been said renders it unnecessary to consider the

335 Mass. 407                                                       417

Second Bank-State Street Trust Co. *v.* Second Bank-State Street Trust Co.

contention of the guardian ad litem that the validity (under the rule against perpetuities) of the limitations in paragraph Third (and presumably of other provisions of the Lonach trust) should be determined in the light of events as they in fact existed at the settlor's death rather than on the basis of all the possibilities as they existed at the effective date of the instrument. He in effect would apply the "second look" principle, stated in *Sears* v. *Coolidge*, 329 Mass. 340, 343, et seq. (or a somewhat analogous doctrine) to an irrevocable, nonamendable, inter vivos trust, over the corpus of which the settlor had no power of appointment, although he reserved to himself a life estate. As to trust instruments becoming effective after January 1, 1955 (see St. 1954, c. 641, § 2, but see G. L. [Ter. Ed.] c. 184A, § 5, inserted by § 1 of that act), such action is required by G. L. (Ter. Ed.) c. 184A, § 1, also inserted by § 1 of the 1954 act. A similar result has been reached in at least one other jurisdiction by judicial decision. *Merchants National Bank* v. *Curtis*, 98 N. H. 225. See *Story* v. *First National Bank & Trust Co.* 115 Fla. 436.[10] We do not now pass upon this contention.

The executors are not entitled to an accounting. The analysis of paragraph Third already made shows that there is now no possibility of any interest returning to the settlor's estate.

A decree, the details of which are to be fixed by a single justice, is to be entered (1) declaring that the executors of the settlor have no interest whatsoever in the property held in trust by the trustees of the Lonach trust; (2) denying the prayer of the executors for an accounting; and (3) upon the prayers for declaratory relief in the several answers, declaring the rights of the defendants in accordance with

---

[10] See Leach, Perpetuities in Perspective: Ending the Rule's Reign of Terror, 65 Harv. L. Rev. 721; Leach, Perpetuities: Staying the Slaughter of the Innocents, 68 L. Q. Rev. 35; Leach, Perpetuities Legislation, Massachusetts Style, 67 Harv. L. Rev. 1349; Tudor, Absolute Certainty of Vesting under the Rule against Perpetuities — A Self-Discredited Relic, 34 B. U. L. Rev. 129; Reform of Rule against Perpetuities, 92 Trusts and Estates, pages 768–774; Am. Law of Property, § 24.10. Compare Simes, Is the Rule against Perpetuities Doomed, 52 Mich. L. Rev. 179; Simes, Public Policy and the Dead Hand, pages 32–82, especially at pages 65–77.

this opinion. Costs, counsel fees, and expenses of the executors are to be settled in their account. Counsel fees, costs and expenses of the defendants and of the guardian ad litem are to be in the discretion of the single justice and may be allowed from the Lonach trust.

*So ordered.*